Tamara L. GREER, etc., Plaintiff,

v.

SKILCRAFT, et al., Defendants.

John S. KIRKPATRICK, Plaintiff,

v.

AMERICAN MOTORS CORP., et al., Defendants.

Ashley Victoria Barnett, etc., Plaintiff,

v.

MTD PRODUCTS, INC., Defendant.

Nos. CV 88–P–2152–S, CV 88–P–2188–S, CV 88–P–2192–S.

United States District Court, N.D. Alabama, S.D.

Jan. 31, 1989.

Hillard R. Reddick, Jr., L. Andrew Hollis, Jr., John A. Taber, Hardin and Taber, Birmingham, Ala., Harvey B. Morris, Cleary, Lee, Morris, Evans & Rowe, Huntsville, Ala., for Tamara L. Greer by and through William B. Greer, Tina Greer.

James C. King, Wilson & King, Jasper, Ala., Jerry K. Selman, Selman, Beaird & Selman, Jasper, Ala., for John S. Kirkpatrick.

Edgar M. Elliott, IV, Rives & Peterson, Birmingham, Ala., for Skilcraft, Sears, Roebuck & Co., Inc., Dr. Winston Guthrie, and Wife Barbara, Scott Guthrie, et al.

William R. Lucas, Jr., Sid J. Trant, Bradley, Arant, Rose & Whitt, Birmingham,

Ala., for American Motors Corp., American Motors Sales Corp., Jeep Corp., et al.

Roger D. Burton, Jaffe, Burton & Digiorgio, Birmingham, Ala., for Ashley Victoria Barnett, by and through Teresa Myer's Barnett.

James W. Gewin, Joseph S. Bird, Bradley, Arant, Rose & White, Birmingham, Ala., for Columbia Mfg. Co., Inc., et al.

## OPINION

POINTER, Chief Judge.

More than 150 civil actions were removed to this court on December 15, 16, and 19, 1988. Most were cases with fictitious parties that had been pending in state court for months or even years, and were being removed on the basis of Section 1016 of the Judicial Improvements and Access to Justice Act, P.L. 100–702 (the "Act"). This flurry of activity resulted from the defendants' belief that this Section—which in part provides that the citizenship of defendants sued under fictitious names is to be disregarded for purposes of removal—became effective on November 19, 1988, applied to cases pending in state court on that date, and might be available as a basis for removal of pending cases for a period of only 30 days. Recognizing that under another provision of the Section they too might have only 30 days to act, plaintiffs in many of the cases promptly filed motions to remand.

For two reasons it is desirable for the basic issues to be considered and resolved jointly by all of the judges of this court to whom civil cases are regularly assigned.[1] First, there should, if possible, be uniformity within the court in ruling on these common and potentially recurring questions. Second, consideration by several judges is desirable since, by virtue of 28 U.S.C. § 1447(d), orders remanding a case to state court are not ordinarily subject to review by an appellate court.

To facilitate a joint ruling, many of the briefs filed in the various cases have been exchanged among the various judges of the court. In addition, on January 6, 1989, several judges of this court heard the oral arguments regarding remand of the cases assigned to the undersigned.

## I. Facts of the Cases.

In order to evaluate the issues in differing factual contexts, the court has selected three cases to address specifically in this opinion. The court will consider, however, not only the arguments made by parties in these cases, but also alternative or additional arguments made by counsel in other cases. The pertinent facts of the three cases are as follows:

*Greer v. Skilcraft* (CV 88–P–2152–S): This action, based upon the explosion of a toy chemistry set, was commenced in state court on January 11, 1984. Plaintiffs are Alabama citizens. Originally named as defendants were the manufacturer and seller of the set (neither a citizen of Alabama); the parents of the child to whom the toy had been entrusted, and the child (all citizens of Alabama); and numerous fictitious defendants. The named defendants were served in 1984. The Alabama defendants were voluntarily dismissed on January 30, 1986, pursuant to a settlement. The case was scheduled for trial in state court for January 9, 1989, but was removed by the remaining named defendants on December 16, 1988. On December 20, 1988, plaintiffs moved to remand. There has been no dismissal or substitution of the fictitious parties.

*Kirkpatrick v. American Motors Corp.* (CV 88–P–2188–S): This action, based upon a motor vehicle accident, was commenced in state court on November 30, 1987. Plaintiff is an Alabama citizen. Originally named as defendants were the manufacturers and designers of the motor vehicle (neither a citizen of Alabama) and several fictitious parties described as

---

1. For these same reasons this court had similarly issued the equivalent of an *en banc* opinion when considering the impact on the removal of cases with fictitious parties caused by a change

in Alabama case law. *See Hamby v. Zayre Corp.*, 544 F.Supp. 176 (N.D.Ala.1982). *Hamby* is discussed *infra* at pp. 1578–79.

others who manufactured, designed or assembled the vehicle or were responsible for its allegedly defective condition. The named defendants were served in December 1987. The case was removed by the only named defendants on December 16, 1988. On January 11, 1989, plaintiff moved to remand. There has been no dismissal or substitution of the fictitious parties, but the named defendants assert that, prior to November 19, 1988, they could have removed the case because they had determined there were no persons fitting the description of the fictitious parties who were citizens of Alabama.

*Barnett v. MTD Products, Inc.* (CV 88–P–2192–S): This action, based upon injuries sustained in a motorbike accident, was commenced in state court on August 10, 1984. Plaintiff is an Alabama citizen. Originally named as defendants were the manufacturer of the motorbike (not a citizen of Alabama) and numerous fictitious defendants. The named defendant was not served until March 1988. The case was removed by the only named defendant on December 16, 1988. On January 12, 1989, plaintiff moved to remand. There has been no dismissal or substitution of the fictitious parties.

## II. Effective Date.

■ The Act specifies an effective date for many of its titles and particular sections, but not for Section 1016, for the title in which Section 1016 is found (Title X), or for the Act as a whole. Therefore, the effective date of Section 1016 is the date the Act was enacted, *i.e.*, November 19, 1988, the day it was signed by the President. *See, e.g., United States v. Clizer,* 464 F.2d 121 (9th Cir.), *cert. denied,* 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 673 (1972). This is the one proposition on

which all parties in these cases appear to agree.

## III. Application to Pending Cases.

The parties disagree, however, as to the extent various parts of Section 1016 apply to cases pending in state court on the effective date of the Act, a question not explicitly addressed in the Section or in the sparse legislative history. Some of the plaintiffs contend that Section 1016(a)—providing that the citizenship of fictitious defendants shall be disregarded—applies only to cases filed after November 19, 1988. Defendants potentially affected by Section 1016(b)(2)(B) —providing that a case may not be removed on the basis of diversity-of-citizenship jurisdiction more than one year after commencement of the action—contend that this provision does not apply to cases pending on November 19, 1988, or that this provision does not apply to cases made removable for the first time by Section 1016(a). The primary arguments are directed towards interpretation of the legislation, rather than constitutionality of retroactive application.[2]

### A. General Principles.

■ The basic rule is that courts should apply laws in effect at the time they are called upon to render decisions unless "manifest injustice" would result. *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (upholding award of attorneys' fees based on legislation enacted during pendency of appeal). According to *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019, the assessment of manifest injustice centers on three factors: (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights. In explaining the second factor, the *Bradley* court referred to cases in which application of legislation to pending cases would have deprived a party of a "right that had matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at

2. For purposes of this Opinion, the court accepts *arguendo* the characterization of an application of Section 1016 to cases pending in state court as "retroactive" or "retrospective." However, since the Opinion only addresses problems

related to removal of cases after the effective date of the legislation, many decisions would describe that as a "prospective" application of the legislation.

2020.[3]

A somewhat different formulation of the rule, apparently intended to broaden retrospective application, has been adopted with respect to *procedural* legislation: such changes are to be applied to pending litigation "absent some contrary indications by the Congress and absent any procedural prejudice to either party." *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 563, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954 (1967) (upholding judgment rendered in a district where, but for intervening legislation, venue would have been improper). The cases cited by the Supreme Court for this principle indicate that "procedural prejudice" should be given a rather narrow meaning: *United States v. Alabama,* 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960) (allowing action to proceed against State as a defendant on basis of legislation passed after suit was filed); *Ex parte Collett,* 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949) (allowing transfer of FELA action on basis of legislation enacted after case filed); *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189 (1921) (applying to case on appeal new legislation regarding injunctions in labor disputes).

The Eleventh Circuit has noted that the court need not find specific language in the statute or legislative history before applying new legislation to pending cases:

In general, it is unnecessary to find affirmative support in a statute or its legislative history for applying it to pending cases. A statute will be assumed to apply to cases pending at the time of its passage unless there is a "clear indication" that it is *not* to apply.

*United States v. Marengo County Comm'n,* 731 F.2d 1546, 1553 (11th Cir.),

*cert. denied,* 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 311 (1984) (emphasis in original).

The distinction between the rules for *substantive* and *procedural* legislation is described in *United States v. Fernandez–Toledo,* 749 F.2d 703 (11th Cir.1985).[4] In refusing to apply amendments to the Bail Act made by the Comprehensive Crime Control Act of 1984, which had been enacted after the district court had set terms for release, the Eleventh Circuit stated (749 F.2d at 705):

We do not give retroactive effect to this change in the law. We are, however, mindful of the general rule that a new statute should apply to cases pending on the date of its enactment unless manifest injustice would result. *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Central Freight Lines, Inc. v. United States,* 669 F.2d 1063, 1069 (5th Cir. Unit A 1982). Additionally, cases in this circuit have held that new statutes that affect antecedent rights will not apply retroactively while those that affect only procedure or remedy will apply retroactively. *See, e.g., United States v. Vanella,* 619 F.2d 384, 385–86 (5th Cir.1980). In this case the changes in the substantive and procedural aspects of the Bail Act are contemporaneous. It would be manifestly unjust to apply the new substantive law to the appellees because they were entitled to be released and their release was ordered by the district court before the new law became effective and before this case was heard by the panel. Their rights to bail had already vested, *i.e.,* it was an antecedent right existing before the change in the law.

In applying these principles, the Supreme Court has repeatedly observed that "no one has a vested right in any given mode of

---

**3.** One of the cases cited by the Court was *Union Pacific Railroad Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913), in which it had been said (231 U.S. at 199, 34 S.Ct. at 102) that new legislation should not be given retrospective operation to pending litigation unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." This restrictive view of

application to pending litigation appears to have been replaced over the years by the approach stated in *Bradley.*

**4.** Also see *Jackson v. People's Republic of China,* 794 F.2d 1490 (11th Cir.1986) (refusing to apply 1976 jurisdictional statute to foreign bonds previously issued while issuer immune from suit).

procedure." *Crane v. Hahlo*, 258 U.S. 142, 147, 42 S.Ct. 214, 216, 66 L.Ed. 514 (1922), quoted with approval in *Ex parte Collett*, 337 U.S. 55, 71, 69 S.Ct. 944, 953, 93 L.Ed. 1207 (1949), which in turn is quoted with approval in *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 563, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954 (1967).

B. The Legislation and its History.

According to Section 1016(a) of the Act, 28 U.S.C. § 1441(a) "is amended" by adding a new sentence to the end of that section. With the new sentence shown in italics, § 1441(a) has, since November 19, 1988, read as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. *For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.*

According to Section 1016(b)(2) of the Act, 28 U.S.C. § 1446(b) "is amended" by substituting "notice of removal" for "petition for removal" and by adding a clause to the second paragraph of that subsection. With the changes shown in italics, § 1446(b) has, since November 19, 1988, read as follows:

> The *notice of removal* of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a *notice of removal* may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.*

As in *Ex parte Collett*, 337 U.S. 55, 58, 69 S.Ct. 944, 946, 93 L.Ed. 1207 (1949), there is nothing in the statutory language itself to suggest that any civil actions were intended to be excluded from the reach of the amendatory legislation.

The provisions that ultimately became Section 1016 of the Act stem from a proposal made in 1987 by the Judicial Conference's Committee on Court Administration. The Judicial Conference in its September 1987 meeting endorsed the draft and recommended to Congress its adoption. REPORT OF PROCEEDINGS, Jud.Conf. of U.S., p. 71 (1987). The proposed language, without significant changes, was incorporated into a mark-up of H.R. 3152 in May 1988, was included in the "clean bill" (H.R. 4807) when it was subsequently introduced in the House, and was added to S. 1482, the Senate counterpart, in Summer 1988. The provisions were included in the Act when passed by the Senate on October 14, 1988, and by the House on October 19, 1988.

The Act contains in ten titles a variety of provisions aimed at improving the administration of justice. One of the areas of major concern was the rising caseload in the federal courts; and, at least as a partial solution, the Act made various changes to reduce the number of diversity-of-citizenship cases that would be handled in the federal court.[5] See Sections 201 (increase of required amount-in-controversy) and 202 (change in definition of citizenship of legal representatives and certain corporations).

---

**5.** Initially Congress was considering total elimination of diversity jurisdiction. This approach apparently proved too controversial and was dropped from later versions of the legislation.

Section 1016 to a degree will have the same effect.

The only source for determining the understanding of Congress as to the meaning and scope of Section 1016 is the Section-by-Section Analysis (the "Congressional Analysis") contained in H.R.REP. No. 889, 100th Cong., 2d Sess. 71–73 (1988), U.S.Code Cong. & Admin.News 1988, pp. 5982, 6031–6034, which was subsequently presented to the Senate, 134 CONG.REC. S16308–09 (1988). Pertinent extracts are as follows:

All of the proposed amendments in this section relate to removal jurisdiction. The amendments would, among other things, allow the citizenship of fictitious or "Doe" defendants to be disregarded for removal purposes; ... establish a one-year limit on removal based on diversity jurisdiction; ... and regulate the joinder of additional parties after removal.

Subsection (a) amends 28 U.S.C. 1441(a) to permit the citizenship of fictitious defendants to be disregarded. This amendment addresses a problem that arises in a number of states that permit suits against "Doe" defendants. The primary purpose of naming fictitious defendants is to suspend the running of the statute of limitations. The general rule has been that a joinder of Doe defendants defeats diversity jurisdiction unless their citizenship can be established, or unless they are nominal parties whose citizenship·can be disregarded even if known. This rule in turn creates special difficulties in defining the time for removal. Removal becomes possible when the Doe defendants are identified or dropped, perhaps as late as the start of trial, or when it becomes clear that any claims against the Doe defendants are fictitious or merely nominal. At best, the result may be disruptive removal after a case has progressed through several stages in the State court. At worst, the result may be great uncertainty as to the time when removal becomes possible, premature attempts to remove and litigation over removability, and forfeiture of the removal opportunity by delay after

the point that in retrospect seems to have made clear the right to remove. These problems can be avoided by the disregard of fictitious defendants for purposes of removal. Experience in the district courts in California, where Doe defendants are routinely added to state court complaints, suggests that in many cases no effort will be made to substitute real defendants for the Doe defendants, or the newly identified defendants will not destroy diversity. If the plaintiff seeks to substitute a diversity-destroying defendant after removal, the court can act as appropriate under proposed § 1447(d) to deny joinder, or to permit joinder and remand to the State court.

\* \* \* \* \* \*

Section (b)(2) amends 28 U.S.C. 1446(b) to establish a one-year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. Under section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plaintiff. Settlement with a diversity-destroying defendant on the eve of trial, for example, may permit the remaining defendants to remove. Removal late in the proceedings may result in substantial delay and disruption.

\* \* \* \* \* \*

Subsection (c) amends 28 U.S.C. 1447(c) and adds a new subsection (e). Section 1447(c) now appears to require remand to state court if at any time before final judgment it appears that the removal was improvident. So long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State

or Federal courts, or the parties, should be subject to the burdens of shuffling a case between two courts that each have subject matter jurisdiction. There is also some risk that a party who is aware of a defect in removal procedure may hold the defect in reserve as a means for forum shopping if the litigation should take an unfavorable turn. The amendment provides a period of 30 days within which remand must be sought on any ground other than lack of subject matter jurisdiction. The amendment is written in terms of a defect in "removal procedure" in order to avoid any implication that remand is unavailable after disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that instead might be remanded.

\*　　\*　　\*　　\*　　\*　　\*

Proposed section 1447(e) is new. It takes advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal. Joinder coupled with remand may be more attractive than either dismissal under civil rule 19(b) or denial of joinder. The flexibility built into the framework of rule 19(b) fully supports this approach. This provision also helps to identify the consequences that may follow removal of a case with unidentified fictitious defendants.

Although nothing in this Congressional Analysis explicitly addresses the extent to which the various changes should affect cases pending in state court on the effective date of the Act, the parties have naturally highlighted some of the commentary as support for their respective arguments. With respect to the applicability of the one-year bar on removal, for example, defendants find comfort in the comments that the legislation will eliminate uncertainties that have led to forfeiture of the opportunity for removal and that the amendment addresses problems that arise from a volun-

tary change of parties. On the other hand, the Analysis also expresses concern over the delay and disruption occurring if cases are removed after they have been pending for some time in state court. This concern obviously can apply to cases pending on November 19, 1988, such as *Greer v. Skilcraft,* CV 88–P–2152–S, which had been pending for almost five years in the state court and was set for trial when removed by the defendants on the basis of Section 1016. The Analysis indicates that Congress was aware—and intended—that the amendments would reduce opportunities for removal after a case had been pending for some time in state court and would result in elimination of defendants' potential access to federal court in some cases.

### C. General Conclusions.

■ The court concludes that the various amendments made by Section 1016 should apply to cases pending in state court on November 19, 1988—unless, that is, prejudice of the type contemplated in *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 563, 87 S.Ct. 1746, 1750, 18 L.Ed. 2d 954 (1967), can be established. The court is persuaded that the amendments viewed in their entirety constitute procedural legislation, that the language of the amendment appears to cover pending as well as subsequently-filed cases, and that the legislative history does not indicate that any cases should be excluded from its reach.[6]

Considerations involving retroactivity of court decisions are not identical with those relating to legislation. However, it should be noted that this court's *"en banc"* decision in *Hamby v. Zayre Corp.,* 544 F.Supp. 176 (N.D.Ala.1982), and the Ninth Circuit's *en banc* decision in *Bryant v. Ford Motor Co.,* 832 F.2d 1080 (9th Cir.1987), *cert. granted,* —— U.S. ——, 109 S.Ct. 54, 102 L.Ed.2d 32 (1988), were given retroactive application to cases already filed.

---

**6.** We expressly do not decide whether the one-year limitation contained in Section 1016(b)(2)(B) is a jurisdictional bar or a proce-

dural bar; but we do conclude that, if a procedural bar, Congress intended it to be strictly enforced.

## D. Prejudice.

█ Some of the plaintiffs contend that Section 1016(a) should not be applied to pending cases—that to disregard citizenship of fictitious parties for purposes of removal is prejudicial to them because they are being deprived of the opportunity to discover and join additional defendants while still in state court, which in turn could result in having a viable claim against a new defendant that might be barred by the statute of limitations if the action were in federal court. The foundation for this argument rests on the fact that the relation-back of amendments under Fed.R.Civ.P. 15(c) is more restricted than that provided by Ala.R.Civ.P. 9(h) and 15(c).

This claimed prejudice is speculative and premature.[7] If the defendant that would be added is one who would have destroyed diversity—and hence would have prevented removal under prior law—the plaintiff will have the opportunity under amended § 1447(e) to use this as a reason why the court should exercise its discretion by allowing the amendment but remanding the case to state court for further proceedings.[8] On the other hand, if the defendant that would be added is one who would not have destroyed diversity—and hence not have ultimately prevented removal under prior law—the plaintiff can make the same arguments regarding which relation-back rule to apply as are made in existing cases. This latter question—which relation-back rule should be applied in federal court to actions removed from state court—potentially affects all such cases, not just those removed under the auspices of Section 1016, and does not appear to have been decided definitively by any appellate court.

The court concludes that application of Section 1016 has not been shown to prejudice impermissibly the rights of plaintiffs in pending cases. Accordingly, Section 1016(a) is held to apply to cases pending on November 19, 1988, with the consequence that the citizenship of fictitious parties is to be disregarded for purpose of removal in those cases as well as in cases subsequently filed.

█ Some defendants contend that Section 1016(b)(2)(B) should not be applied to pending cases, or at least not to those that had been pending for more than one year when the Section became effective. They argue that such an application would be prejudicial and indeed manifestly unjust because they would be forever barred from removing the case on the basis of diversity jurisdiction whereas, under prior law, they had the potential opportunity—if not the accrued right—to remove the case to federal court.

This claimed prejudice is premised primarily upon the defendants' alleged reliance on this court's *"en banc"* decision in *Hamby v. Zayre Corp.*, 544 F.Supp. 176 (N.D.Ala.1982).[9] In that case the court held that cases were not ordinarily removable to federal court on the basis of diversity of citizenship while they contained fictitious defendants—without regard to the specificity of the description of, or of the charges against, such persons in the summons or in the caption or body of the complaint. The court further held that if the named defendants could show that the fictitious defendants were merely nominal parties, were fraudulently joined to defeat

---

7. Some plaintiffs contend that application of a more restrictive statute of limitations in federal court would have constitutional implications. For the reasons indicated, however, this is an argument that would have to be made when the court has that issue to decide, rather than as a ground for not applying Section 1016 to pending cases.

8. The applicability of Section 1016(c)(2), adding § 1447(e), is not directly before the court. However, there is little reason to believe that it would not apply to cases pending in the state court on November 19, 1988, if they are subsequently removed to federal court. Indeed, it should also apply to cases removed to federal court prior to that date.

9. Some counsel attempt to bolster their argument by implying that *Hamby* created for this district a special and artificial barrier to removal. However the basic rule preventing removal of cases with fictitious defendants was stated by the Supreme Court in *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939). *Hamby* simply represented this court's efforts to apply the *Pullman* doctrine in the light of the procedures followed in Alabama state courts.

federal jurisdiction, were non-existent, or were persons whose citizenship would not prevent removal, they would have the option either to remove the case at that time or to wait to remove until the plaintiff voluntarily abandoned any claims against the fictitious defendants or made substitutions of persons whose citizenship would not prevent removal. If the plaintiff were to substitute non-diverse parties before removal, then, under *Hamby,* the defendants would never be able to remove the case unless the plaintiff voluntarily dismissed those non-diverse parties.

Defendants' contention that their rights would be prejudiced by application of Section 1016(b)(2)(B) because of their "reliance" on *Hamby* is, for most of the cases, a specious argument. To be sure, Section 1016 prescribes removal rules different from those stated in *Hamby.* This is simply because Section 1016 represents—as Congress clearly intended—a change of existing law. In most of the cases before the court—such as *Greer v. Skilcraft,* CV 88–P–2152–S, and *Barnett v. MTD Products, Inc.,* CV 88–P–2192–S—the defendants have not failed to exercise any rights of removal based upon some reliance on *Hamby.* To the contrary, under *Hamby* prior to November 19, 1988, they did not have the right to remove their case, but only the possibility of such an opportunity depending on later developments in the case. Application of the new one-year bar to removal will not, in the words of the Supreme Court in *Bradley v. Richmond School Board,* 416 U.S. 696, 720, 94 S.Ct. 2006, 2020, 40 L.Ed.2d 476 (1974), deprive them of any "right that had matured or become unconditional."

In a few cases, such as *Kirkpatrick v. American Motors Corp.,* CV 88–P–2188–S, the contention that a right has been lost through reliance on prior law has more substance. Defendants in that case assert that, prior to November 19, 1988, they had a right to remove because they had determined and could have established that any fictitious defendants would have been persons whose citizenship would not have destroyed diversity jurisdiction. They contend that they had decided to delay removing the case in reliance upon the option accorded by *Hamby* in such circumstances.[10] They do not explain why they made the decision to delay removing the case: were they, for example, "testing the waters" in the state court before selecting the more favorable forum, or were they planning to wait to remove until the case was called for trial? Nor do they explain why they failed to avoid the loss of access to federal court by removing the case during the months the legislation was being considered by Congress or during the thirty days it was waiting for the President's signature.

Defendants in cases like *Kirkpatrick* can certainly urge that, if applied to their case, Section 1016(b)(2)(B) will deprive them of a matured and unconditional right to remove the case. The question remains as to the nature of this right and the nature of the impact of the change in law upon those rights. *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

Removal of diversity cases to federal court, while stemming from a constitutional source, is basically a matter of procedure,[11] and is dependent on the scope of Congressional enactments.[12] Removal affects the forum where a dispute is to be resolved, not the substantive merits of the dispute. Indeed, the federal court after removal would be obliged to apply the

---

**10.** As a twist on this argument, some other defendants have urged that, in reliance on *Hamby,* they did not engage in discovery to determine the citizenship of persons that might fit the description of the fictitious parties and hence were dissuaded from activity that might have led to removability prior to the Act taking effect.

**11.** *See, e.g., Meyers–Arnold Co. v. Maryland Casualty Co.,* 248 F.Supp. 140 (D.S.C.1965).

**12.** Some counsel have cited *Home Ins. Co. of New York v. Morse,* 87 U.S. (20 Wall) 445, 22 L.Ed. 365 (1874), as if it accords a constitutional right to remove based on Article 3, section 2, of the Constitution. A careful reading of this case, however, reflects that it held that, to the extent Congress acts under this power to confer a right to remove, States cannot deprive citizens of the rights thereby conferred.

same substantive rules of decision which the state court is to apply. Moreover, in a state like Alabama that has adopted rules of procedure patterned on the federal rules, even the procedural rules would be substantially identical.

Similar cases have come before the Supreme Court on several occasions. In *Ex parte Collett*, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), the Court held that an Act permitting transfer of FELA cases to other courts should be applied to cases pending when the legislation was enacted. The Court noted that "no one has a vested right in any given mode of procedure." 337 U.S. at 71, 69 S.Ct. at 953, quoting *Crane v. Hahlo*, 258 U.S. 142, 147, 42 S.Ct. 214, 216, 66 L.Ed. 514 (1922). Eighteen years later, repeating the quotation, the Court in *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 563, 87 S.Ct. 1746, 1750, 18 L.Ed.2d 954 (1967), upheld a judgment rendered in a district where, but for legislation passed while the case was pending, venue would have been improper.

The argument can be made that these cases involved only the question as to where, within the federal court system, a dispute should be heard. Perhaps more to the point is *Hallowell v. Commons*, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916). There the Supreme Court held that passage of legislation providing that the Secretary of the Interior, rather than federal courts, should determine disputes between Indians over rights of succession should be applied to cases already pending in court. The Court stated (239 U.S. at 508, 36 S.Ct. at 203):

> [The Act] made his jurisdiction exclusive in terms, it made no exception for pending litigation, but purported to be universal, and so to take away the jurisdiction that for a time had been conferred upon the courts of the United States.... [T]he reference of the matter to the Secretary ... takes away no substantive right, but simply changes the tribunal that is to hear the case. In doing so it

evinces a change of policy, and an opinion that the rights of the Indians can be better preserved by the quasi paternal supervision of the general head of Indian affairs. The consideration applies with the same force to all cases, and was embodied in a statute that no doubt was intended to apply to all, so far as construction is concerned.

"*Hallowell's* characterization of a jurisdictional shift from district court to an administrative tribunal as not affecting substantive rights suggests that the concept of 'procedural' change in this regard is not to be narrowly restricted." *United States v. Blue Sea Line*, 553 F.2d 445, 449 (5th Cir.1977).

As in *Hallowell*, Section 1016(b)(2)(B) evinces a change of policy which applies with equal force to all cases—a policy that cases which remain in state court for more than a year should not be removed on the basis of diversity of citizenship, even though this will deprive some defendants of an opportunity they would have had under prior law. As in *Hallowell*, the new law simply provides for a change of the tribunal that is to hear the case. The defendants' alleged "right" to remove to federal court based on prior law is no more inviolate than the plaintiffs' alleged "right" to prevent removal based on prior law.

■ The court concludes that application of Section 1016(b)(2)(B) has not been shown to prejudice impermissibly the rights of defendants in pending cases.[13] Accordingly, Section 1016(b)(2)(B) is held to apply to cases pending on November 19, 1988, with the consequence that removal of cases under the second paragraph of 28 U.S.C. § 1446(b) as amended normally may not be effected more than one year after the case was commenced in state court. This conclusion, by according the same effect to both Section 1016(a) and 1016(b)(2), avoids the inconsistency that infects the argument of many defendants. This conclusion takes account of the fact that, when in this same

---

13. The contention by some defendants that application of Section 1016(b)(2)(B) to pending litigation would be irrational and so harsh as to violate the equal protection and due process clauses of the Constitution is without colorable merit and undeserving of discussion.

Act Congress wanted a change to affect only subsequently-filed litigation, it included specific language to that effect.[14] Finally, this conclusion is consistent with the practice followed by this court in *Hamby* and by the Ninth Circuit in *Bryant v. Ford Motor Co., supra,* in applying new decisional rules governing removal; namely, by applying those to cases already pending in state court and not just to those subsequently filed.

### E. Scope of Amended § 1446(b).

An alternative contention by many defendants is that, even if generally applicable to pending cases, Section 1016(b)(2)(B) does not apply to cases removed on the basis of the change of law made by Section 1016(a). Their argument is as follows: inclusion of the one-year bar for removal of diversity cases was accomplished by adding the clause only as a condition or limitation to the second paragraph of § 1446(b), and that paragraph applies only when the potential for removal occurs by reason of the defendant's receiving some jurisdiction-creating post-complaint document in the particular case. This interpretation is, they say, supported by a statement in the Congressional Analysis, *i.e.,* "The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court." H.R.REP. No. 889, *supra,* at p. 72, U.S.Code Cong. & Admin.News 1988, at p. 6032. They also cite dictum to this same effect in a recent decision by the judge reputed to have been at least partly responsible for drafting Section 1016. *See Ehrlich v. Oxford Insurance Co.,* 700 F.Supp. 495 (N.D.Cal.1988) (Schwarzer, J.).

The first paragraph of § 1446(b) requires that a defendant file the appropriate re-moval document in federal court within 30 days after first receiving either an initial pleading or a summons. The second paragraph has provided that a defendant in a case not removable on the basis of the initial pleading may file the appropriate removal document in federal court within 30 days after receiving "a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." To the end of this second paragraph, Section 1016(b)(2)(B) has added the proviso prohibiting removal on the basis of diversity jurisdiction after a case has been pending in state court more than one year. The defendants argue that a removal based on the change of law of Section 1016(a) is not governed by either paragraph and hence the one-year bar is not applicable.

■ Defendants see no difficulties arising from the fact that, under this argument, neither paragraph of amended § 1446(b) would apply to removal based on enactment of Section 1016.[15] The means for effecting removal is, they say, adequately covered in amended § 1446(a)—the filing of a "Notice of Removal" in federal district court—and the inapplicability of § 1446(b) simply means that Congress has specified no time limit at all for such removals.[16]

■ The court certainly agrees that the defendants did not remove, and could not have removed, their cases under the first paragraph of § 1446(b); but we disagree with their argument that the second paragraph of that subsection does not apply to removals based on the change in law effected by Section 1016(a). The fact that the change in law did not result in receipt of a jurisdiction-creating document is not

---

**14.** *See, e.g.,* Section 202(b) of the Act (amendment redefining citizenship of legal representatives and certain corporations for purposes of diversity jurisdiction made applicable to cases commenced in, or removed to, federal court on or after 180th day following enactment).

**15.** One of the defendants, appreciating that an open-ended period for removal would hardly be consonant with the general purposes of the legislation, has suggested that the court might fash-ion its own "reasonable" time limit, such as 30 days from the effective date of the Act.

**16.** We conclude that all of the changes made by Section 1016(b)—including the provisions for effecting removal by filing a Notice of Removal rather than a Petition for Removal and the provisions eliminating the requirement for a bond—apply to all cases removed after November 19, 1988.

controlling. This court has found that the practical equivalent of the receipt of such a document in the case may start the 30–day period. For example, announcement by plaintiff's counsel in open court of readiness to proceed with a scheduled trial, implicitly effecting discontinuance of the action against fictitious parties, has been held to start the period running.

■ The one-year bar added to the end of the second paragraph of § 1446(b) is not, however, by its terms merely a limitation on removal of cases that become removable by receipt of a jurisdiction-creating document in the case. It provides that "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after the commencement of the action;" and it applies whenever the second paragraph of § 1446(b) is triggered; *i.e.*, "if the case stated by the initial pleading is not removable." In short, the second paragraph of amended § 1446(b) provides that for cases not removable on the basis of the initial complaint there are two separate and independent time limits: (1) the Notice of Removal must be filed within 30 days from the receipt of a jurisdiction-creating document in the case; and (2), if removal is based on diversity of citizenship, the Notice of Removal must also be filed within one year from the commencement of the action.

This construction comports with the plain language of the subsection as amended, uses the time limits that Congress considered to be reasonable, and is not inconsistent with the sparse legislative history. The Congressional Analysis did state that Section 1016(b)(2) "addresses problems that arise from a change of parties as an action progresses towards trial in state court." This Analysis does not, however, indicate that application of the one-year rule was intended to apply solely in such situations, any more than it indicates that removal based on Section 1016(a) should be postponed until receipt of a document changing the parties in the case.

This conclusion—that the one-year bar does apply to pending cases that became otherwise removable on November 19, 1988, by virtue of Section 1016(a)—eliminates an anomaly that defendants did not address. Under their argument, *Greer v. Skilcraft*, CV 88–P–2152–S, could have been removed because the resident defendants had been dismissed prior to November 19, 1988, whereas the case would not have been removable if that settlement had occurred after November 19, 1988.

No doubt there may be factual patterns that will present additional special problems to the court in applying the time limits of amended § 1446(b). One is considered in Part III–F of this Opinion; the court will consider others when they arise in particular cases. It should, however, be emphasized that the court is not here binding itself to a strict adherence to literalism that precludes appropriate interpretation when the circumstances warrant. As already noted, the announcement by a plaintiff in open court of readiness to proceed with a scheduled state court trial has been held by this court to be a removal-creating event that triggers the 30–day removal period although technically not constituting receipt of a document in the case. *See also Insinga v. LaBella*, 845 F.2d 249 (11th Cir.1988), holding that, notwithstanding the literal language of the statute, dismissal of diversity-destroying defendants over whom state court has jurisdiction will provide opportunity for removal only if dismissal was voluntary on the part of the plaintiff.

F. Commencement of Actions.

■ The defendant in *Barnett v. MTD Products, Inc.*, CV 88–P–2192–S, contends that its removal of the case on December 16, 1988, was within a year from the "commencement" of the action in state court. Although a complaint was filed in state court in August 1984, the defendant was not served with the summons and complaint until March 1988, which would be less than a year before removal. Defendant contends the plaintiff had no intention of effecting service at the time of filing the complaint and that therefore the action was not "commenced" at that time.

The defendant relies upon *Ward v. Saben Appliance Co.*, 391 So.2d 1030 (Ala. 1980), and *Pettibone Crane Co. v. Foster,*

485 So.2d 712 (Ala.1986). Both cases emphasize that under ALA.R.CIV.P. 3—and its earlier statutory counterparts, *e.g.,* 1940 CODE OF ALA., Title 7, § 43—an action is commenced when the complaint, accompanied by any required filing fee, is filed with the court, although that event does not constitute "commencement" for all purposes. In *Ward,* 391 So.2d at 1035, the court said:

> We hold that in the present case the action was not "commenced" when it was filed with the circuit clerk because it was not filed with the *bona fide* intention of having it immediately served. To hold otherwise would permit a party to extend unilaterally the period of limitations by an oral request that actual service be withheld, thereby giving that party an additional period of time within which he could conduct an investigation to determine whether in fact, he had a claim. To permit this would violate the fundamental concept of repose found within every statute of limitations.

The same is true with regard to the one-year bar. The one-year period does not begin to run until the complaint has been filed and there has been a *bona fide* effort to have it served. To hold otherwise would be to provide the plaintiff the power to prevent removal by manipulation and inaction. The one-year bar was intended to reduce, not encourage, delays in case adjudication. As noted in footnote 6 *supra,* Congress intended this bar to be strictly enforced, even *sua sponte* if necessary.

### IV. Summary.

In summary, the court holds that Section 1016 of the Act became effective on November 19, 1988; that Section 1016(a) and Section 1016(b) apply to cases that were pending in State court on that date; and that the one-year limit on removal added by Section 1016(b)(2) does apply to cases that are removed on the basis of the change of law made by Section 1016(a) and is measured from the date the complaint was filed in state court accompanied by a *bona fide* effort to have it served.

We realize that some may view our holding as harsh, creating an unfair situation for defendants who were bound by or entitled to rely upon *Hamby v. Zayre Corp.,* 544 F.Supp. 176 (N.D.Ala.1982). However, Congress, which had the power to preclude removal of all cases, certainly could have precluded removal of cases commenced more than one year prior to November 19, 1988. The clear language of the statute compels that result. Courts are not free to disregard that mandate merely because the drafters of the legislation failed to consider all of the consequences of such a directive.

Consistent with this Opinion, separate orders will be entered in CV 88–P–2152–S and CV 88–P–2188–S, remanding these cases to state court. The motion to remand in CV 88–P–2192–S will be reheard on the issue of the plaintiff's efforts with regard to service.

HANCOCK, GUIN, HALTOM, PROPST, CLEMON, ACKER, LYNNE and ALLGOOD, JJ., concur.