Rosa SANTIAGO, Individually, and as the Next Friend of Jose Santos, a Minor, Plaintiffs,

v.

BARRE NATIONAL, INC., Defendant.

Civ. A. No. 92–10227–WD.

United States District Court,
D. Massachusetts.

June 8, 1992.

Thomas M. Kiley, Thomas M. Kiley, P.C. Associates, Boston, Mass., for plaintiffs.

Stephen D. Menard, Badger, Dolan, Parker & Cohen, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

### I. *Introduction*

The plaintiff asserted negligence and breach of warranty claims against a pharmacy and two drug companies arising out of the use of a drug which she alleges left her minor son with serious permanent brain damage. The case was originally filed in Suffolk Superior Court in June 1990. After the nondiverse party settled out of court, defendant Barre National, Inc. removed the case to federal court in February 1992. The plaintiff, asserting the removal was not timely, then moved to remand the case to state court.

For reasons discussed below, I will allow the plaintiff's motion, and remand the case to state court.

## II. *Factual History*

In November 1986 the plaintiff's 14-month-old son, Jose Santos, was diagnosed as having scabies, for which his doctor prescribed Kwell. Ms. Santiago filled the prescription at Penn's Pharmacy in Lawrence, MA and used the lotion on Jose numerous times during late November and early December 1986. Jose was subsequently diagnosed as having permanent neurological damage, including serious developmental delays, a seizure disorder, and cerebral palsy. Experts retained by the plaintiff are of the belief that Jose's physical injuries and limitations were caused by the use of the drug dispensed by Penn's Pharmacy, and that as a result of those injuries Jose will be permanently and totally disabled from all gainful employment.

In June 1990, Ms. Santiago filed this action in state court on behalf of her son Jose against Penn's Pharmacy and Block Drug Inc., the manufacturer of Kwell.[1] In her complaint, Ms. Santiago stated claims for negligence, breach of warranty, and violations of Mass.Gen.L. ch. 93A. Ms. Santiago claimed that Block marketed and dispensed Kwell despite the fact that it was unsafe, not of merchantable quality, and not fit for its intended purposes. She also claimed that Penn's Pharmacy had negligently failed to provide adequate dispensing information to her.

During the discovery which took place during the following months, the plaintiff learned that Penn's Pharmacy had dispensed to her not Kwell, but a generic version of Kwell.[2] Consequently, on January 29, 1991 Ms. Santiago filed an amended complaint to add Barre National, Inc., a manufacturer of the generic Kwell lotion (called Lindane lotion), as a defendant. Barre National is a foreign corporation, one of approximately twenty manufacturers of Lindane lotion, and allegedly the distributor of the drug which was dispensed by Penn's Pharmacy to Ms. Santiago.

The subsequent discovery process has included five other depositions as well as additional document production and interrogatories propounded by the plaintiff.

On April 11, 1991 the parties entered into a stipulation dismissing all claims against Block Drug, apparently out of agreement that there was insufficient evidence to identify Block's product, Kwell, as the product dispensed to Ms. Santiago. The stipulation left Penn's Pharmacy and Barre National as the remaining defendants in this suit.

In October 1991, Judge Hiller Zobel, to whom this case was assigned, held a scheduling conference at which he set a trial date of December 3, 1991. On November 8, 1991, Barre National moved to continue the trial. After a November 11th hearing on Barre National's motion, Judge Zobel took the case off the trial list and did not set a new trial date.

On January 28, 1992, the plaintiff settled her claim against Penn's Pharmacy for $700,000. That same day, Barre National filed its petition for removal pursuant to 28 U.S.C. § 1446(b), based upon diversity of the remaining parties (Santiago and Barre National). On February 24, 1992 the plaintiff moved pursuant to 28 U.S.C. § 1447(c) for remand of this case to Suffolk Superior Court, plus costs, expenses and attorney fees.

## III. *Discussion*

■ A. *The Removal Statute*—The plaintiff has moved to remand this case to state court on grounds that the clear language of 28 U.S.C. § 1446(b) prohibits removal because Barre National's notice of removal was filed more than a year after this suit's commencement. I agree.

In November 1988 Congress enacted the Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 1016, 102

---

1. Block is a foreign corporation.

2. The discovery consisted of four depositions (two pharmacists from Penn's Pharmacy, Ms. Santiago, and a sales representative from one of Penn's drug suppliers), as well as document production.

Stat. 4642, 4669–70 (1988) (the "Act"). Among other things, the Act amended the removal statute, 28 U.S.C. § 1446.

Section 1446(b) contains two time limitations with respect to civil cases such as this, i.e., those in which removal was initially unavailable.[3] First, a defendant must remove the case within thirty days of receiving a pleading or other paper from which the defendant may ascertain that the case is or has become removable. In addition, as a result of the 1988 amendment, § 1446(b) contains a second time limitation for such defendants:

> a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

Thus, the plain language of the statute forbids removal on diversity grounds of cases which commenced in state court more than one year previously. The statute contains no exceptions to its prohibitory language.

■ The question of when an action "commences" is to be determined by the applicable state law. *See Kite v. Richard Wolf Medical Instruments Corp.*, 761 F.Supp. 597, 599 (S.D.Ind.1989); *Greer v. Skilcraft*, 704 F.Supp. 1570, 1582–83 (N.D.Ala.1989). Under Massachusetts Rule of Civil Procedure 3,

> [a] civil statute is commenced by (1) mailing to the clerk of the proper court ... a complaint and an entry fee prescribed by law or (2) filing such complaint and an entry fee with such clerk.

Mass.R.Civ.P. 3. *See also Finkel v. Natale Rota, Inc.*, 19 Mass.App.Ct. 55, 56 n. 2, 471 N.E.2d 396 (1984), *rev. denied*, 393 Mass. 1106, 474 N.E.2d 182 (1985). Therefore, this action commenced on June 5, 1990, when it was filed in Suffolk Superior Court and it is clear that defendant Barre National removed this case more than a year after it commenced, i.e., in January 1992. That is precisely what § 1446(b) was designed to prevent.

The language of § 1446(b) is clear and unambiguous. Moreover, the Act's legislative history reinforces the interpretation that the one-year bar is absolute. The impetus for the one-year limitation came from a congressional attempt to limit the diversity jurisdiction of the federal courts. When total elimination of diversity jurisdiction proved too controversial, Congress took the intermediate step of imposing, *inter alia,* the one year limit. *See Greer v. Skilcraft,* 704 F.Supp. 1570, 1575 n. 5 (N.D.Ala.1989) (en banc).[4]

The congressional history of the one-year limitation consists of the section-by-section analysis of Section 1016 contained in H.R.Rep. No. 889, 100th Cong., 2d Sess. 71–73 (1988), U.S.Code. Cong. & Admin.News 1988, pp. 5982, 6031–34, which was subsequently presented to the Senate, 134 Cong.Rec. S16308–09 (1988). The pertinent analysis reads as follows:

> Section (b)(2) amends 28 U.S.C. 1446(b) to establish a one-year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. Under [the current] section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plaintiff. Settlement with a diversity-destroying defendant on the eve of trial, for example, may permit the remaining defendants to remove. Removal late in the proceedings may result in substantial delay and disruption.

---

**3.** Here, there was incomplete diversity of the parties until the dismissal and settlement of the defendants other than Barre National.

**4.** Other related Congressional action included increasing the required amount in controversy and changing the definition of citizenship of legal representatives and certain corporations.

This legislative history reflects congressional awareness that the proposed amendment to § 1446(b) would prohibit removal in exactly the kind of situation which this suit represents: a case in which 1) only state law causes of action are alleged; 2) diversity jurisdiction arises only because of the subsequent dismissal of one of the defendants; 3) substantial progress has already been made in the state court;[5] and 4) the suit was removed more than a year after it was commenced. Section 1446(b) was designed to reach this situation with a *per se* prohibition.

■ Historically, "the creation of the right of removal in diversity cases was designed to secure a competent and impartial tribunal for one who has been brought unwillingly into state court, the supposition being that the state tribunal may not be impartial between its own clients and non-residents." *Saunders v. Wire Rope Corp.*, 777 F.Supp. 1281, 1284 (E.D.Va.1991). Removal statutes, however, are to be strictly construed in order to further principles of judicial economy and comity. *See, e.g., American Home Assur. Co. v. Insular Underwriters Corp.*, 494 F.2d 317, 319 (1st Cir.1974).

Barre National urges flexibility, citing three cases in support of a relaxed view of the one-year time bar in § 1446(b). However, the cases cited by Barre National turn variously upon discrete interpretations of state law regarding when a case commences (a matter which is not at issue in this case), and involve circumstances giving rise to judicial concern that the plaintiff manipulated the judicial process in order to block removal by the defendant(s). Consequently, they are inapplicable to the case at bar.

For example, in *Saunders v. Wire Rope Corp.*, 777 F.Supp. 1281 (E.D.Va.1991), the plaintiffs filed complaints (in Virginia, referred to as "motions for judgment") against two companies, one resident and one foreign, but directed that service of the foreign company be withheld for a year. The foreign company was subsequently served and the plaintiffs settled with the resident company. However, the plaintiff made no effort to have the order of dismissal as to the resident defendant entered. After the foreign company learned of the settlement, it moved to have the order of dismissal entered. When the state court did so, the foreign company removed the case pursuant to § 1446(b). The removal took place more than a year after the plaintiffs had filed their motions for judgment but less than a year after the foreign company had been initially served. The plaintiffs then moved to remand the case.

The district court declined to allow the plaintiffs' motion to remand on the basis that to do so would support the plaintiff's "gameplan for circumventing removal," *Saunders*, 777 F.Supp. at 1284: by refusing to serve one of the defendants, the plaintiffs had prevented the case from progressing in state court and denied the foreign company its right of removal. In effect, the *Saunders* court held that the plaintiffs' action had not *commenced* until the foreign company had been served and thereby had an opportunity to respond to the action against it. *Id.* at 1285. And since the removal had taken place less than a year after service (i.e., "commencement" of the action), the court denied the motion to remand. *Id.*

Barre National, in addition, looks to *Greer v. Skilcraft*, 704 F.Supp. 1570 (N.D.Ala.1989) in support of a relaxed view of § 1446(b)'s language. But *Greer* is also distinguishable. In *Greer*, an en banc panel of the Northern District of Alabama construed commencement of an action un-

---

**5.** Barre National argues, *inter alia,* that Congress intended to bar removal only in cases where "substantial progress" has been made in state court. Barre National's protestations aside, I find that there has been "substantial progress" made in this case, including depositions, document production and a pretrial conference with Judge Zobel. In any event, I reject Barre National's interpretation of Congressional intent; whether or not such progress has, in fact, been made is ultimately irrelevant because § 1446(b)'s one-year prohibitory language is absolute and establishes a *per se* mandate. *See Royer v. Harris Well Service, Inc.*, 741 F.Supp. 1247, 1249 (M.D.La.1990); *Rezendes v. Dow Corning Corp.*, 717 F.Supp. 1435, 1438 (E.D.Cal. 1989).

der Alabama law as being when a complaint has been filed *and* there has been a bona fide effort to have it served. *Greer,* 704 F.Supp. at 1583. According to the panel, only at that point would the one-year limitation period in § 1446(b) begin to run.

In some of the cases under consideration by the *Greer* court,[6] the plaintiffs had engaged in case manipulation or had simply failed to act, resulting in substantial lags between the time their complaints were filed and the time the defendants were served. The *Greer* court refused to be complicit in these efforts by the plaintiffs to delay case adjudication, and noted that the one-year bar in § 1446(b) was intended to reduce, not encourage, such delay. *Id.* at 1583.

Finally, Barre National relies upon *Kite v. Richard Wolf Medical Instruments Corp.,* 761 F.Supp. 597 (S.D.Ind.1989). However, Barre National's reliance is again misplaced. In *Kite,* diversity of the parties initially existed, so the defendant removed the case within 30 days as required by § 1446(b). Seventeen months later, the plaintiff moved to amend his complaint to add a diversity-destroying defendant and moved at the same time to remand the case to state court. Four months later, the district court granted both motions, the result of which was that the state court again assumed jurisdiction over the case. Nearly three years thereafter, the plaintiff and the diversity-destroying defendant entered into a joint stipulation of dismissal. The foreign defendant then removed the case once again to federal court and in response, the plaintiff moved to remand the case a second time to state court. The District Court declined to do so.

Implicit in the court's decision in *Kite* was a concern that plaintiffs might fraudulently join a nondiverse defendant for the purpose of preventing federal court consideration of its claims. *Kite,* 761 F.Supp. at 600. Observing that it was loathe to encourage plaintiff manipulation of the removal process and also undermine Congres-

sional intent to provide a federal forum to defendants who timely remove diversity cases, the *Kite* court held that it would recognize an exception to the one-year time bar of § 1446(b). That exception applies to those cases where the defendant has removed the case in a timely manner only to have the plaintiff later add a diversity-destroying defendant and then dismiss the case as to that defendant more than one year after the action was commenced. *Kite,* 761 F.Supp. at 601.

The several cases relied upon by Barre National are factually distinguishable from this case. First, there is no evidence—and Barre National has not alleged—that there was any manipulation of the parties here by the plaintiff. This case was not initially removable and Barre National was added as a defendant only after deposition testimony revealed that it, not Block, was a more likely cause of Jose's injuries.

Second, upon learning that Barre National allegedly was the pharmaceutical distributor to Penn's Pharmacy, the plaintiff promptly amended her complaint and served Barre National with a summons and complaint. Thus, there was no manipulation by the plaintiff of the service process.

Third, upon discovering that there was insufficient evidence to link Block Drug's product (Kwell) to Jose's injuries, the plaintiff stipulated to a dismissal with Block Drug and promptly filed that stipulation with the court. Thus, there was no delay in dismissing that defendant.

Fourth, as to the diversity-destroying defendant, i.e., Penn's Pharmacy, the plaintiff ultimately settled for a substantial sum with that defendant and then filed a notice of dismissal with the court. Penn's Pharmacy was not a straw party and the plaintiff did not delay filing the notice of dismissal after settlement so as to thwart removal efforts by the defendant.

Accordingly, I will apply § 1446(b) as it is written and will order this case—improvidently removed to this court over one year

---

**6.** In *Greer,* the court consolidated numerous cases which presented similar questions necessi-

tating interpretation of § 1446.

after it was commenced—remanded to the state court.

B. *Costs, Fees and Expenses*—Pursuant to 28 U.S.C. § 1447(c) the plaintiff has asked for its costs, fees and expenses in connection with the defendant's efforts to remove this case. In *Hom v. Service Merchandise Co.*, 727 F.Supp. 1343 (N.D.Cal.1990), decided shortly after the amendment to § 1446(b) was enacted, the court concluded that in view of the fact that the law interpreting the Act was still developing, the defendants' basis for removal and opposition to the plaintiff's motion to remand was colorable. Thus, the *Hom* court denied the plaintiff's request for attorney fees and costs.

While the instant motion to remand was filed two years after *Hom*, Barre National is correct in pointing out that the First Circuit has not had the occasion to interpret the new one-year limitation of § 1446(b). Moreover, some courts have applied a flexible approach to the limitation provision. Of course, the case law interpreting § 1446(b) strictly is nearly uniform and such exceptions as have arisen address factual circumstances not present here. Nonetheless, I find that Barre National's claim was colorable. Accordingly, the plaintiff's request for costs, fees and expenses will be denied.

## IV. *Conclusion*

For the reasons set forth more fully above, the plaintiff's motion to remand pursuant to § 1447(c) is hereby GRANTED; and plaintiff's request for fees, costs and expenses is hereby DENIED.