Kimberly ROBINSON, a minor under the age of 18 years, by her guardian Ad Litem, John ROBINSON, Plaintiff,

v.

J.F. CLECKLEY & COMPANY, INC., Ford Motor Company, Inc., South Carolina Department of Highways and Public Transportation, Walter Earl Pickel, Jr., a minor under 18 years, by his Guardian Ad Litem, Walter Earl Pickel, Sr., and Walter Earl Pickel, Sr., Defendants.

John ROBINSON and Aurelia Robinson as Natural Parents and Guardians of Kimberly Robinson, a minor under the age of 18 years, Plaintiffs,

v.

J.F. CLECKLEY & COMPANY, INC., Ford Motor Company, Inc., South Carolina Department of Highways and Public Transportation, Walter Earl Pickel, Jr., a minor under 18 years, by his Guardian Ad Litem, Walter Earl Pickel, Sr., and Walter Earl Pickel, Sr., Defendants.

Civ. A. Nos. 2:89–2872–1, 2:89–2873–1.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 5, 1990.

James H. Moss and W. Thomas Vernon, Beaufort, S.C., for plaintiffs.

Keating L. Simons, III and Trent M. Kernodle, Charleston, S.C., for defendant Ford Motor Co., Inc.

HAWKINS, Chief Judge.

This case is before this court on the report and recommendation of the United States Magistrate made in accordance with Title 28, United States Code, Section 636(b)(1)(B). Objections to the Magistrate's recommendation to remand this case to state court were filed by the defendant on August 30, 1990.

## FACTS

This matter arises out of an automobile accident which occurred in April of 1986. In the accident, Kimberly Robinson sustained severe brain injuries when the car in which she was a passenger left the road and hit an embankment, virtually demolishing the car. As a result of the injuries sustained in the car accident, Kimberly will be institutionalized or will continuously require professional care for the remainder of her life. In addition to their claim against the driver of the vehicle, Kimberly's parents, in an action as guardians and an action in their capacity as parents (hereinafter "Plaintiffs"), filed claims against the South Carolina Department of Highways and Public Transportation, a road contractor, J.F. Cleckley and Company, Inc., and Ford Motor Company on June 27, 1986. Due to the presence of diversity destroying defendants, the case was not removable to federal court under 28 U.S.C. § 1446.

On September 30, 1987, the cases were removed from the active court calendar pursuant to Rule 40(c)(3) of the South Car-

olina Rules of Civil Procedure.[1] On January 29, 1988, while the cases were removed from the active calendar, Plaintiffs settled with the driver of the vehicle. Subsequently, Plaintiff's motion to have the cases restored to the trial calendar of the Beaufort County Court of Common Pleas was granted by court order on January 19, 1989.

On November 9, 1989, Plaintiff settled with the South Carolina Department of Highways and Public Transportation as well as the contractor, J.P. Cleckley and Company, Inc., thereby creating, for the first time, diversity of citizenship between the Plaintiff and Ford Motor Company, Inc. (hereinafter the "Defendants"). Defendant filed a notice of removal pursuant to 28 U.S.C. § 1441, *et seq.* on December 6, 1989. On December 14, 1989, Plaintiffs filed a motion to remand and supporting memorandum. A memorandum in opposition to the Plaintiff's motion to remand was filed by Defendant and arguments on the motion were heard before Magistrate Robert S. Carr on April 4, 1990.

Plaintiffs assert that the motion to remand should be granted because the Defendant's motion to remove was untimely. The Plaintiffs maintain that the suits commenced in June of 1986 and that the restoration of the case pursuant to the Rule 40(c)(3) order did not create a new case for purposes of 28 U.S.C. § 1441(b). Thus, because the Defendant raised its motion to remove on December 6, 1989, more than one year after the commencement of the suit, the Defendant's motion was outside the limit specified under 28 U.S.C. § 1446(b).

Alternatively, the Defendant argues that the Rule 40(c)(3) order effectively dismissed the cases. As a result, the cases were "commenced" when they were restored to the calendar on January 19, 1989. Therefore, Defendant's removal on December 6, 1989 was within the one year time limit of 28 U.S.C. § 1446(b). The Magistrate rec-

ommended that the cases be remanded to state court.

## ANALYSIS

■ The applicable standard of review dictates the scope of this inquiry. By statute, the court is charged with conducting a *de novo* review of any portions of the Magistrate's report to which specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The court is not bound by the recommendation of the Magistrate and retains responsibility for the final determination. *See Brock v. Heckler*, 612 F.Supp. 1348, 1350 (D.C.S.C.1985). However, if neither party objects to the factual or legal conclusions of the Magistrate, the statute does not require review of those conclusions by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–50, 106 S.Ct. 466, 471–72, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986). Accordingly, the court has reviewed, *de novo*, only those conclusions of the Magistrate to which objections have been made.

■ The Defendant objects to the report and recommendation of the Magistrate on three grounds. First, the defendant asserts that the Magistrate incorrectly interpreted the definition of "commence" for the purposes of 28 U.S.C. § 1446(b) by focusing on the definition of "commence" as stated in Rule 3 of the South Carolina Rules of Civil Procedure. Further, the defendant objects to the failure of the Magistrate's report to address the status of a case that has been stricken from the calendar under Rule 40(c)(3) and is subsequently restored. Finally, the defendant asserts that the Magistrate's report and recommendation fails to consider the congressional intent behind the one year limitation for removal under 28 U.S.C. § 1446(b). (De-

---

1. The rule provides:

   When an action is reached on the trial roster and is called for trial, it shall not be continued by consent, and if its counsel are not ready to go forward, the court shall strike the action from the calendar with leave to restore, unless continuance is granted for good cause shown. If the case is restored after being stricken, it shall be placed at the foot of the calendar and a new case number assigned. S.C.R.Civ.P. 40(c)(3).

fendant's Objection to Magistrate's Report and Recommendation).

■ To date, there have been no Fourth Circuit cases which have interpreted the one year limitation in 28 U.S.C. § 1446(b).[2] Therefore, these cases present issues of first impression for this court not only on the interpretation of the recent amendments to 28 U.S.C. § 1446(b), but also, by necessity, the interpretation of Rule 40(c)(3) of the South Carolina Rules of Civil Procedure (hereinafter "Rule 40(c)(3)"). In deciding this case, we are governed by the precept that removal statutes are to be strictly construed against removal and in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). An examination of the legislative history of the 1988 amendments to 28 U.S.C. § 1446(b) provides a useful background for our analysis.

The Judicial Improvements and Access to Justice Act (Pub.L. 100–702) (hereinafter, the "Act") was signed into law on November 19, 1988. Included in the Act were amendments dealing with the removal of suits to federal court based on diversity of citizenship. Section 1016(b)(2) of the Act amended former 28 U.S.C. § 1446(b) by substituting "notice of removal" for "petition for removal" and adding a time limitation prohibiting removal of an action to federal court more than one year following the commencement of the action. 28 U.S.C. § 1446(b) now reads, in pertinent part

> If the case stated by the initial pleading is not removable, a *notice of removal* may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable *except that a case may not be removed on the basis of jurisdiction conferred by section 1332*

*of this title more than 1 year after commencement of the action.*

28 U.S.C. § 1446(b) (emphasis added).

As the legislative history of the Act clearly states, the purpose of the Act was "to improve the administration of justice in this nation...." H.R.Rep. No. 889, 100th Cong., 2d Sess. 22 (1988), U.S.Code Cong. & Admin.News 1988, pp. 5982, 5983 (hereinafter *House Report*). One concern in particular was the increasing caseload of the federal courts. *Id.* at 23, U.S.Code Cong. & Admin.News 1988, p. 5983. To address these concerns, Congress made various changes to the requirements for diversity jurisdiction cases, which included increasing the amount-in-controversy from $10,000 to $50,000 (Section 201), changing the definition of citizenship of legal representatives and certain corporations (Section 202) as well as the one year limitation provided in Section 1016(b) of the Act. Congress estimated that the increase in the amount-in-controversy would decrease the federal caseload up to forty percent. 28 U.S.C. § 1332 Commentary.

The Section-by-Section Analysis included in the *House Report* provides further insights into the congressional interpretation of the 1988 amendments, and specifically addresses Subsection (b)(2) which added the one year limitation

> Subsection (b)(2) amends 28 U.S.C. § 1446(b) to establish a one-year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in the state court. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court. The elimination of parties may create for the first time a party alignment that supports diversity jurisdiction. Under section 1446(b), removal is possible whenever this event occurs, so long as the change of parties was voluntary as to the plain-

---

**2.** It should be noted that *Johnson v. Celotex Corp.*, 701 F.Supp. 553 (D.Md.1988) was decided on November 30, 1988 just eleven days after the Act was signed into law; however, there is no indication that the one-year cap was considered in that case.

tiff. Settlement with a diversity-destroying defendant on the eve of trial, for example, may permit the remaining defendants to remove. Removal late in the proceedings may result in substantial delay and disruption.

*House Report* at 6032–33.

■ It is abundantly clear that the terms of 28 U.S.C. § 1446(b) are to be defined by reference to state law. *Coman v. International Playtex, Inc.*, 713 F.Supp. 1324, 1328 (N.D.Cal.1989); *Greer v. Skilcraft*, 704 F.Supp. 1570, 1582–83 (N.D.Ala.1989). As the commentary to 28 U.S.C. § 1446(b) states

The amendment puts a one-year cap on removal if the purported basis for the federal jurisdiction is the diversity of citizenship of the parties.

That will not pose any special problems in most cases. It may be expected that the lineup of the parties in the state court action has become a permanent one by the time a year has gone by. But it will not always be so. The result in a given case is made to depend on the procedural variations—and perhaps the procedural eccentricities—of the particular state's practice. The amendment may sometimes give too much control to the state court plaintiff who wants to resist a removal to the federal court at all costs.

28 U.S.C. § 1446(b) Commentary.

Congress noted the potential decrease in a defendant's ability to remove to federal court, but acknowledged this decrease as a "modest curtailment." *House Report* at 6032. Nevertheless, we should keep in mind that the intent of Congress was to increase judicial administration, at least in part, by reducing the caseload of the federal courts.[3] *House Report* at 5983. As one court has stated, the Act indicates "that Congress was not concerned with enlarging or protecting any defendant's right to be in federal court." *Chen v. China Airlines Ltd.*, 713 F.Supp. 1322, 1324 (N.D.Cal. 1989).

Given that the interpretation of the one-year cap is contingent upon an interpretation of state procedure, we turn now to a review of S.C.R.Civ.P. 3(a) (hereinafter "Rule 3(a)") and S.C.R.Civ.P. 40(c)(3) (hereinafter "Rule 40(c)(3)"). Under Rule 3(a), all civil lawsuits are "commenced" by the filing and service of a summons and complaint. Rule 3(a). Rule 40(c)(3) reads, in pertinent part,

**Actions Called for Trial.** When an action is reached on the trial roster, and is called for trial, it shall not be continued by consent, and if counsel are not ready to go forward the court shall strike the action from the calendar (file book) with leave to restore, unless continuance is granted for good cause shown. If the case is restored after being stricken, it shall be placed at the foot of the calendar (file book) and a new case number assigned.

S.C.R.Civ.P. 40(c)(3).

■ Rule 40(c)(3) became effective on July 1, 1985. To date, there have been no reported cases interpreting its provisions. This court is mindful of the difficulties of interpreting state law for the first time. Nevertheless, we should not refuse to decide a case merely because the state law issue is undecided. *Meredith v. Winter Haven*, 320 U.S. 228, 236, 238, 64 S.Ct. 7, 11, 12, 88 L.Ed. 9 (1943). In these situations, resort to certification is not obligatory and the court must be mindful that certification may "engender delay and create additional expense for the litigants" who have already been involved with this case for over four years. *Lehman Bros. v. Schein*, 416 U.S. 386, 394, 94 S.Ct. 1741, 1745, 40 L.Ed.2d 215 (1974) (Rehnquist, J., concurring). Finally, in deciding the import of Rule 40(c)(3), we recognize that

[t]he state's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the

---

**3.** In fact, one proposed amendment suggested that diversity jurisdiction be abolished. 123

F.R.D. 399, 404 (1989).

state. In this respect, it may be said to be, in effect, sitting as a [lower] state court. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).

The issue raised by the Defendant is essentially whether a case that has been stricken from the calendar pursuant to Rule 40(c)(3) is recommenced, for purposes of 28 U.S.C. § 1446(b), when it is restored to the calendar or whether the time bar of section 1446 continues to run while the case remains off of the docket. Contrary to the report of the Magistrate, the Defendant contends that the case is commenced when it is restored to the calendar, thus marking a new reference point for the beginning of the one-year limitation of Section 1446. The court respectfully disagrees.

■ Although this court is unaided by any legislative history on the passage of Rule 40(c)(3), we believe that the intent of the Rule is to allow litigants who are unprepared to move their case forward to trial the chance to reanalyze their position and prepare their case further without using their single opportunity to take a voluntary non-suit without prejudice. *Compare* S.C.R.Civ.P. 41(a)(1) *with* S.C.R.Civ.P. 40(c)(3). As such, rule 40(c)(3) is an administrative rule which is designed to clear the calendar of cases which are simply not ready for trial so that the court may address cases which are ready for trial. *See Small v. Mungo*, 254 S.C. 438, 442–44, 175 S.E.2d 802, 804 (1970).

In addition, as Magistrate Carr explained in his report, the procedure for restoration is not the same as the procedure for commencing a new case. The commencement of a case requires the filing and service of a summons and complaint. S.C.R.Civ.P. 3(a). The restoration of a case under Rule 40(c)(3) does not require service; rather, the case may be restored merely by refiling the case and paying the new filing fee. S.C.R.Civ.P. 40(c)(3).

■ Nor does this court believe that the payment of a new filing fee is an indication that the case has "commenced." Fees are charged for numerous activities and are merely a vehicle for compensating the administrative office of the court for their time in preparing documentation. *See* S.C. Code Ann. § 8–21–310 (1976). For example, if a case is restored, the payment of a new filing fee is required because a new case number is being assigned.

We are aware of the statement governing filing fees in S.C.Code Ann. § 8–21–310(11) that "for filing first complaint or petition in a civil action ... thirty-five dollars ... there may be no further fee ... for filing any other paper in the same action or proceeding." Nevertheless, this court would be remiss if we allowed administrative laws on filing fees to dictate important procedural rights.

■ In conclusion, this court agrees with the report and recommendation of the magistrate. As stated above, it is clear that the determination of when an action commences must be determined by reference to state law. *See* 28 U.S.C. § 1446(b) Commentary. Further, for purposes of 28 U.S.C. § 1446(b), an action which has been removed from the docket pursuant to S.C. Civ.P. 40(c)(3) is pending while it is off of the docket. Finally, it is clear that the congressional intent in promulgating the one-year cap on removal was to limit federal jurisdiction. Remand to state court is not inconsistent with this intent. Therefore, based on the foregoing, it is

ORDERED that the report and recommendation of the Magistrate be, and hereby is, adopted. It is

ORDERED FURTHER, that pursuant to 28 U.S.C. § 1447(c), this case is remanded to state court for lack of subject matter jurisdiction.

AND IT IS SO ORDERED.