**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: KATHERINE SUSAN LOWE,

Petitioner.

No. 96-560

On Petition for Writ of Mandamus.
(CA-95-134-1-D)

Argued: October 30, 1996

Decided: December 17, 1996

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Petition for writ of mandamus granted by published opinion. Judge
Motz wrote the opinion, in which Judge Murnaghan and Judge Nie-
meyer joined.

_____

**COUNSEL**

**ARGUED:** Harvey Leroy Kennedy, KENNEDY, KENNEDY, KEN-
NEDY & KENNEDY, L.L.P., Winston-Salem, North Carolina, for
Petitioner. James Walker Williams, ROBERTS & STEVENS, P.A.,
Asheville, North Carolina, for Respondents. **ON PLEADINGS:** Har-
old L. Kennedy, III, KENNEDY, KENNEDY, KENNEDY & KEN-
NEDY, L.L.P., Winston-Salem, North Carolina, for Petitioner.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this case, a federal district court attempted to reconsider its order
remanding a case to the state court, after entry of that order. The entry

of the remand order divested the federal court of jurisdiction, even though no certified copy of the order was mailed to the state court. Accordingly, we grant mandamus relief and direct that this case be returned to the state court.

I.

In May 1995, Katherine Lowe sued her employer, Wal-Mart Stores, and two Wal-Mart managers in the Superior Court of Buncombe County, North Carolina. Lowe alleged Wal-Mart wrongfully discharged her in violation of public policy because she accused one of the managers of sex discrimination; she further alleged that both the corporation and the two managers tortiously interfered with her contractual rights.

On June 15, 1995, Wal-Mart and the managers removed the case to federal court pursuant to 28 U.S.C. § 1331 (1994) and 28 U.S.C. § 1441(c) (1994). Lowe urged the court to remand, pointing out that one of the Wal-Mart managers was, like Lowe, a resident of North Carolina, defeating complete diversity of citizenship. Agreeing that there was incomplete diversity between the parties, and therefore that the court lacked "jurisdiction over the subject matter of this controversy," Magistrate Judge Davis (now retired) remanded the case back to state court.[1] The remand order was entered on the district court's docket on August 25, 1995. Although the mailing certificate indicated by means of a "cc:" notation that the district court clerk had sent a copy of the order to the state court, the copy that the state court received lacked the blue backing stating that it was "certified."

On March 7, 1996, another magistrate judge granted the motion for reconsideration by Wal-Mart and the managers, which had been filed August 23, 1995, and in which they asserted that joinder of the North Carolina resident as a defendant was fraudulent. The magistrate judge denied Lowe's motion to remand. Lowe amended her complaint, and again filed a motion to remand, which the court again denied. Lowe then moved to have the district court certify the issue for interlocutory appeal. After the district court refused to do so, Lowe petitioned for

_____

[1] We refer to the magistrate judge by name for the sake of clarity. Legally, of course, the identity of an individual judge is immaterial.

2

a writ of mandamus to this court. She asks that we order the district court to return her case to the state court.**2**

## II.

Wal-Mart urges us to deny the petition for writ of mandamus, reminding us that mandamus is a drastic remedy to be used only in extraordinary circumstances. Mandamus is, in fact, a special remedy, only warranted in exceptional cases. Kerr v. United States Dist. Court, 426 U.S. 394, 402 (1976). However, the Supreme Court and this court have long recognized that circumstances such as those before us present a proper case for use of that remedy. That a court operate solely within its statutory jurisdiction is one of the most fundamental premises of our judicial system. See Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943) (noting that"traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction"). If Lowe cannot petition for mandamus, she "has no other avenue of relief; [she] will be prejudiced in a way not correctable on appeal since [she] will have been forced to endure proceedings in a court that lacks jurisdiction." Seedman v.

_____

**2** Lowe additionally asks that we order the district court to award her attorney's fees pursuant to 28 U.S.C. § 1447(c) (1994), which provides in relevant part that, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The statute thus provides the district court with discretion to award fees when remanding a case. Magistrate Judge Davis did not do so in his remand order and Lowe does not assert that he abused his discretion in failing to order fees. She does ask us to order the district court to award fees now. Even if § 1447(c) empowered us to require the district court to award fees at this juncture, we would decline to do so. There is no evidence of bad faith by either party. Although bad faith is not a prerequisite to an award of attorney's fees under § 1447(c), the very case on which Lowe relies for this proposition notes that there, though the defendant's removal was not necessarily in bad faith, a "cursory examination . . . would have revealed" a lack of federal jurisdiction. See Husk v. E.I. Du Pont De Nemours & Co., 842 F. Supp. 895, 899 (S.D. W. Va. 1994). As evidenced by the significant proceedings in this court and the court below, the issues in this case are not similarly obvious.

United States Dist. Court, 837 F.2d 413, 414 (9th Cir. 1988) (per curiam).

In sum, Lowe's petition alleges that the district court had no jurisdiction to reconsider its remand order. Remedying this type of unlawful exercise of jurisdiction, when it occurs, is a traditional, appropriate use of the writ. See, e.g., Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d 112, 116 (4th Cir. 1979), cert. denied 445 U.S. 911 (1980) (granting writ); Seedman, 837 F.2d at 414 (granting writ); In re La Providencia Dev. Corp., 406 F.2d 251, 253 (1st Cir. 1969) (granting writ).

III.

Since mandamus is a proper remedy if we find that the district court acted beyond its jurisdiction, we turn to the principal issue in this appeal: whether the district court exceeded its jurisdiction when it reconsidered its remand order, after the entry of that order but before the clerk sent a certified copy of the order to the state court.

A federal statute governs this question, 28 U.S.C.§ 1447(c) and (d) (1994). Subsection (c) provides in pertinent part:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c). Subsection (d) provides the bar to reviewing such remand orders:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . .

§ 1447(d).

4

Indisputably, "otherwise" in § 1447(d) includes reconsideration by the district court. See Three J Farms, 609 F.2d at 115 ("Unquestion-ably, the statute not only forecloses appellate review, but also bars reconsideration of such an order by the district court."); La Providen-cia, 406 F.2d at 253 ("Both [district and appellate court review] are foreclosed; nothing could be more inclusive than the phrase `on appeal or otherwise.'").

There are a few exceptions to the general rule that remand orders are not reviewable. For example, remand orders in civil rights cases are reviewable, see 28 U.S.C. §§ 1443, 1447(d), and remand orders in certain other cases are reviewable under the rationale set forth in Thermtron Products v. Hermansdorfer, 423 U.S. 336, 345-52 (1976). The Thermtron doctrine holds that remand orders that do not rely on factors enumerated in § 1447(c), i.e., a "defect in removal procedure" or the "lack[ ] [of] subject matter jurisdiction," are not subject to the § 1447(d) bar to review. See Thermtron, 423 U.S. at 345-52. See also Mangold v. Analytic Servs., 77 F.3d 1442, 1450-51 (1996) (Phillips, J., concurring specially and delivering opinion for court on jurisdic-tion) (detailing current Thermtron jurisprudence). None of these exceptions are applicable here. This is not a civil rights case and the Thermtron doctrine does not apply here because this case was remanded for a reason authorized by § 1447(c)-- lack of subject mat-ter jurisdiction.

The only question remaining, then, is to identify when a court's decision to remand becomes unreviewable. Lowe claims that the dis-trict court lost jurisdiction to reconsider its remand order when it filed or entered that order. Wal-Mart asserts that the district court still retains jurisdiction to reconsider its remand order and will not lose jurisdiction until it sends a certified copy of its order to the state court.

Subsection 1447(d) provides only that a remand "order" may not be reviewed; it does not condition reviewability on any other event. Thus, the plain language of subsection (d) indicates that a court may not reconsider its decision to remand, as soon as it formalizes that decision in an "order." Subsection 1447(c) supports this interpreta-tion. It directs the district court clerk to mail a"copy" of the remand order to the state court, certainly implying that the order itself, the

5

document § 1447(d) tells us is unreviewable, is in existence before the time of the mailing.**3**

The general rule prohibiting review of remand orders has been a part of American jurisprudence for at least a century. See Thermtron, 423 U.S. at 343. In discussing a statutory predecessor of § 1447(d), the Supreme Court noted that the intent of such a rule is "to suppress further prolongation of the controversy by whatever process." In re Pennsylvania Co., 137 U.S. 451, 454 (1890). Thus, this nonreviewability rule rests on a "policy of not permitting interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." United States v. Rice, 327 U.S. 742, 751 (1946). "Removal in diversity cases, to the prejudice of state court jurisdiction, is a privilege to be strictly construed;" for this reason, in deciding whether to remand, "[t]he district court has one shot, right or wrong." La Providencia, 406 F.2d at 252-53. This policy is, of course, entirely consistent with a rule that remand orders become nonreviewable as soon as entered.

"Logic also indicates that it should be the action of a court (entering an order of remand) rather than the action of a clerk (mailing a certified copy of the order) that should determine the vesting of jurisdiction." Van Ryn v. Korean Air Lines, 640 F. Supp. 284, 285 (C.D. Cal. 1985). To hold otherwise would impermissibly elevate substance over form. One party should not arbitrarily receive a second opportunity to make its arguments due to a clerical error. In sum, the plain language of the statute, the policy behind it, and logic all support the conclusion that § 1447 divests a district court of jurisdiction upon the entry of its remand order.

Our case law is totally in accord with this interpretation of § 1447. In our only case directly addressing the question, Three J Farms, we

_____

**3** We recognize that in Thermtron, the Supreme Court relied on an in pari materia approach to interpreting § 1447 rather than examining the plain language of each subsection, as we do here. See Thermtron, at 345-52. However, we believe that our analysis, while focusing on the plain language of the statute, nonetheless respects the Supreme Court direction that subsections (c) and (d) be "construed together." Id. at 345.

6

concluded that "the entry of the order of remand" on the date of the entry of that order "divested the district court of all jurisdiction in this case and precluded it from entertaining any further proceedings of any character, including the defendants' motion to vacate the original remand order." Three J Farms, 609 F.2d at 115.

Wal-Mart claims Three J Farms is not controlling here and that more recent out-of-circuit case law supports Wal-Mart's view that the district court did have jurisdiction to reconsider its remand order. It is true that in Three J Farms the district court did, in fact, forward a certified copy of its order to the state court and so that case is not factually identical to the case at hand. Nevertheless, we have no reason to believe that the Three J Farms court did not mean exactly what it said, i.e. "the entry of the order of remand" divested the federal court of jurisdiction. 609 F.2d at 115 (emphasis added).

As for out-of-circuit law, some of our sister circuits have stated that a federal court's jurisdiction is not divested until its clerk mails a certified copy of the remand order to the state court, see, e.g., Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 225 (3d Cir. 1995); Browning v. Navarro, 743 F.2d 1069, 1078 (5th Cir. 1984); one circuit has indicated that "certification" divests the federal court of jurisdiction, Seedman, 837 F.2d at 414, and another has remarked that reconsideration is universally prohibited "once the state court has resumed jurisdiction." Federal Deposit Ins. Corp. v. Santiago Plaza, 598 F.2d 634, 636 (1st Cir. 1979). However, we are not bound by this precedent and do not believe it consistent with the plain language or purposes of § 1447(c) and (d), let alone our opinion in Three J Farms.

Moreover, the case upon which Wal-Mart primarily relies, Trans Penn Wax, is a Thermtron case. Clearly, the Thermtron rationale does not apply to this case because the remand here was based on a lack of jurisdiction. Furthermore, the portion of Trans Penn Wax that Wal-Mart cites for the proposition that reviewability doctrine has been liberalized since Three J Farms refers to expansion in reviewability of remands under the Thermtron doctrine. See Trans Penn Wax, 50 F.3d at 226. Language in Trans Penn Wax indicating that the failure to send a certified copy permits reconsideration is an alternative holding at best, see id. at 227, and the case on which the Trans Penn Wax

7

court relies for its holding, Thomas v. LTV Corp., 39 F.3d 611 (5th Cir. 1994), deals solely with a Thermtron issue.

Wal-Mart also relies on In re Shell Oil Co., 631 F.2d 1156 (5th Cir. Unit A 1980), for the proposition that when a federal court fails to mail a certified copy to the state court, the federal court retains jurisdiction. Not only did Shell Oil not address the mailing issue, but it, too, rested its decision on Thermtron reasoning. See Shell Oil, 631 F.2d at 1157-58.

Wal-Mart is not on any firmer ground in asserting that in our recent decision in Mangold v. Analytic Services, 77 F.3d 1442 (1996) (Phillips, J., concurring specially and delivering opinion for court on jurisdiction), we held that even a remand for lack of subject matter jurisdiction is reviewable under Thermtron. In fact, in Mangold, we accepted without reservation the black letter law that if lack of jurisdiction were "the actual ground invoked, we may not review this order even if it be manifestly, inarguably erroneous." Id. at 1450.

However, after a searching review of the record in Mangold, we concluded that the district court had believed that it could exercise jurisdiction, but remanded the case anyway because it thought the state court could better address the issues involved. Id. at 1452-53. We noted that the Mangold remand order was in response to a motion to dismiss or grant summary judgment on the merits, not a motion to remand. Id. at 1451. In contrast, here Magistrate Judge Davis issued a remand order in response to Lowe's motion to remand. Magistrate Judge Davis did (apparently incorrectly) note that Wal-Mart did not object to the remand. But unlike the situation in Mangold, nothing indicates Magistrate Judge Davis believed he had jurisdiction to hear the case and that the remand was simply a discretionary act. Rather, Magistrate Judge Davis based his order to remand squarely on a finding that he "lack[ed] jurisdiction over the subject matter of this controversy."

Accordingly, we hold that a federal court loses jurisdiction over a case as soon as its order to remand the case is entered. From that point on, it cannot reconsider its ruling even if the district court clerk fails to mail to the state court a certified copy of the remand order.

8

IV.

The petition for a writ of mandamus is granted and the case is remanded to the district court with instructions that it be returned to the state court.

WRIT OF MANDAMUS GRANTED

9