**US AIRWAYS, INC., et al., Plaintiffs,**

v.

**PMA CAPITAL INS. CO., Defendant.**

No. 1:04CV999.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 1, 2004.

Jennifer Ann Brust, Bean Kinney & Korman PC, Arlington, VA, for Plaintiffs.

Walter J. Andrews, Shaw Pittman LLP, McLean, VA, for Defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

This 9/11 fifty million dollar business interruption insurance dispute was litigated extensively in state court for more than a year, but then removed by the sole remaining defendant when a merger among plaintiffs created diversity jurisdiction. At issue on the remand motion at bar is the following question:

> Whether § 1446(b)'s one year diversity removal bar precludes removal where, as here, removal occurred more than

one year after the case was filed in Virginia state court, but less than one year after defendant was joined and served with process.

### I.

The case originated on August 12, 2003 when U.S. Airways, Inc., a citizen of Virginia and Delaware, filed and served a motion for judgment in the Arlington County Circuit Court, naming as defendants Commonwealth Insurance Company, Greenwich Insurance Company, Maxum Indemnity Company, and XL Insurance America, Inc. A month later, U.S. Airways joined PMA Capital Insurance Company ("PMA") as an additional defendant and four U.S. Airways Group, Inc., express carriers, including Piedmont Airlines, PSA Airlines, Midatlantic Airlines, and Allegheny Airlines, as additional plaintiffs. None of the original defendants are still parties to the suit and the large bulk of the litigation in this case has been waged between the remaining five plaintiffs and PMA.

While in state court, this case made substantial progress toward a final judgment and generated a voluminous record. Extensive discovery was conducted; both sides propounded and responded to multiple sets of written discovery and at least sixteen depositions were taken. Court proceedings included a dozen or more hearings and multiple chambers conferences with the state trial judge. The parties submitted cross-motions for summary judgment, which were fully briefed and argued, and which the state court considered and decided in a written letter opinion. Thereafter, a two-day bench trial was conducted on all issues but damages, and on July 23, 2004, the state court issued Findings of Fact and Conclusions of Law ruling for plaintiffs on the issue of liability and leaving only the issue of damages to be resolved.[1] Barely one month after the

---

1. It is worth noting that at the hearing plain- tiffs' counsel represented that plaintiffs' al-

state court issued its findings on liability, and more than one year after the original suit was filed, defendant sought to remove this case to federal court.

Although the parties have litigated this case for months, only recently did the case become removable. From the filing of the case in August 2003 until the summer of 2004, the parties varied, but there was always at least one defendant that was non-diverse from at least one of the plaintiffs. During this period, therefore, the case was not removable on the basis of diversity of citizenship. More specifically, U.S. Airways filed its initial motion for judgment on August 12, 2003, naming four defendants, some of whom were non-diverse from U.S. Airways. On September 11, 2003, U.S. Airways filed an amended motion for judgment naming PMA, a Pennsylvania corporation, as an additional defendant. On October 7, 2003, the state court entered an order dismissing Maxum Indemnity Company, which still left at least two non-diverse defendants. Thereafter, on November 17, 2003, U.S. Airways filed a second amended motion for judgment naming four additional plaintiffs including Piedmont Airlines, PSA Airlines, Midatlantic Airlines, and Allegheny Airlines. On February 26, 2004, the state court entered an order dismissing all other original defendants, including Commonwealth Insurance Company, Greenwich Insurance Company, and XL Insurance America, Inc., leaving PMA as the sole remaining defendant. At that time, plaintiff Allegheny Airlines ("Allegheny") was a corporation organized under the laws of the State of Delaware with its principal place of business in Harrisburg, Pennsylvania. Thus, the case remained non-removable because Allegheny and PMA were non-diverse.

Not until July 1, 2004, did the case become eligible for removal. On that date, two of the plaintiffs, Allegheny and Piedmont Airlines ("Piedmont"), merged with the result that following the merger, Piedmont absorbed Allegheny. The surviving company maintains its principal place of business in Salisbury, Maryland, and thus is no longer a citizen of Pennsylvania. All other plaintiffs are neither incorporated in Pennsylvania, nor have their principal places of business there. Accordingly, after the merger of Allegheny and Piedmont, the remaining parties were completely diverse.

Although Allegheny and Piedmont merged on July 1, 2004, PMA alleges that it did not learn of the merger until August 12, 2004, when it serendipitously discovered the change in corporate status while conducting research on another matter. Eleven days later and one year and eleven days after the initial filing of the suit, PMA filed a notice of removal in federal court on August 23, 2004. Shortly thereafter, PMA filed here a motion for reconsideration of the state court's findings of fact and conclusions of law, essentially requesting *de novo* review of the lower court's decision.

## II.

 When determining whether a case may appropriately be removed from state to federal court, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). Moreover, "[b]ecause removal jurisdiction raises significant federalism concerns, we must

---

leged damages covered by the policy exceed $50 million, but that PMA's exposure under the policy is limited to $2.5 million, and thus

plaintiffs need only prove that amount in damages during the final phase of the state action.

strictly construe removal jurisdiction." *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). Accordingly, "[i]f jurisdiction is doubtful, a remand is necessary." *Id.* In light of these principles and the one year diversity removal bar established in 28 U.S.C. § 1446(b), this case must be remanded to the Virginia state court.

[redacted] Removal of this case turns on whether PMA's notice of removal was timely filed pursuant to 28 U.S.C. § 1446(b),[2] which states in pertinent part:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, *except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.*

28 U.S.C. § 1446(b) (emphasis added). Pursuant to this provision, therefore, a defendant seeking to remove a diversity case that was not originally removable must comply with two time limits. First, the defendant must remove the case within thirty days of receiving notice of the event that created diversity. And second, even if the defendant satisfies the thirty-day requirement, the defendant may not remove the case "more than 1 year after commencement of the action." In other words, Congress decided that removal should not be an option after more than one year from commencement of the action regardless of when diversity might arise.

[redacted] The law with respect to the thirty-day time limit is well-settled. The statute provides that a defendant must file its notice of removal within thirty days of receiving "through service *or otherwise,* [ ] a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (emphasis added). Thus, a defendant need not receive notice that the case has become removable by service of a formal court document; rather, notice may occur "otherwise" by the receipt of "other paper" from which the defendant may ascertain that the case has become removable.[3] In this case, while PMA concedes that removal occurred more than one month after the merger, it is settled that the thirty-day removal period is not triggered at the instant the case becomes removable, or even when the defendant has enough evidence to surmise that the case might have become removable; rather, an amended pleading, motion, order, or other paper must be " 'unequivocally clear

2. Not at issue here is the requirement that all defendants must join in the removal petition because PMA was the only defendant remaining at the time of removal. *See* 28 U.S.C. § 1441(a); *Chicago R.I.P.R. Co. v. Martin,* 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Dorsey v. Borg–Warner Auto., Inc.,* 218 F.Supp.2d 817, 818 (S.D.W.Va.2002).

3. For example, a number of federal courts have found that deposition testimony may be considered "other paper" within the meaning of § 1446(b). *See Huffman v. Saul Holdings Ltd. P'ship.,* 194 F.3d 1072, 1078 (10th Cir. 1999) (holding that deposition constitutes "other paper"); *Effinger v. Philip Morris, Inc.,* 984 F.Supp. 1043, 1047–48 (W.D.Ky.1997) (collecting cases holding that depositions are "other paper" within meaning of § 1446(b)). The Fourth Circuit has also recognized additional forms of "other paper." *See Lovern v. General Motors Corp.,* 121 F.3d 160, 161 (4th Cir.1997) (interpreting identical language in first paragraph of 1446(b), which applies thirty-day time limit to cases removable at the outset of the case, and including within the definition of "other paper" a police report that demonstrated plaintiff's diverse residency and answers to interrogatories demonstrating the same).

and certain' to start the [thirty-day] time limit running for a notice of removal under the second paragraph of section 1446(b)." *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir.2002); *see also Huffman v. Saul Holdings Ltd. P'ship.*, 194 F.3d 1072, 1078 (10th Cir.1999) ("If the notice is going to run, it ought to be unequivocal.") (citing *DeBry v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir.1979)). The purpose of this rule is to promote judicial economy by reducing " 'protective removals' by defendants faced with an equivocal record." *Bosky*, 288 F.3d at 211 (citation omitted). Although Allegheny's June 1, 2004 merger with Piedmont created diversity of citizenship rendering the case removable for the first time, there is no evidence that PMA received notice of the merger until August 12, 2004, at which time PMA concedes that it had "unequivocally clear and certain" notice that the case was removable. Because there is no showing that PMA had clear notice or knew of the merger prior to that date, the thirty-day filing period did not commence to run earlier than August 12. It follows, therefore, that PMA's notice of removal filed on August 23, 2004, eleven days after learning of the merger, was timely filed less than thirty days after receiving notice by "service or otherwise" of the event that created diversity.

■■ Although PMA's notice of removal clears § 1446(b)'s first procedural hurdle, it falters on the second. Because Congress has prohibited removal of a diversity case "more than 1 year after commencement of the action," a crucial question in the one year bar analysis is the determination of the date of the "commencement of the action." 28 U.S.C. § 1446(b). In this regard, it is well-settled that state law governs the determination of the "commencement of the action" for the purpose of the one year limit on removal.[4] And in Virginia, Rule 3:3 of the Rules of the Supreme Court of Virginia defines the commencement of an action in the following terms:

> (a) Commencement of the action. An action shall be commenced by filing in the clerk's office a motion for judgment. The action is then instituted and pending as to all parties defendant thereto.

Va. Sup.Ct. R. 3:3. By the Rule's plain language, an action is commenced, and thus § 1446(b)'s one year limitations period begins to run, on the date a party files a motion for judgment in the clerk's office.[5] In this case, therefore, the action

---

**4.** *See Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir.1993) ("State law determines when an action is commenced for removal purposes."). While the Fourth Circuit has no published decision on point, at least two district courts in the circuit have applied the same principle. *See Sheppard v. Wire Rope Corp.*, 777 F.Supp. 1285, 1287–88 (E.D.Va.1991); *Robinson v. J.F. Cleckley & Co.*, 751 F.Supp. 100, 104 (D.S.C.1990); *see also Provenza v. Yamaha Motor Co.*, 295 F.Supp.2d 1175, 1177 (D.Nev.2003) ("For purposes of the one year limitation on diversity jurisdiction cases, 'commencement' of an action is governed by the law of the state in which the case originated."); *Zumas v. Owens-Corning Fiberglas Corp.*, 907 F.Supp. 131, 133 (D.Md.1995) (same); *Santiago v. Barre Nat'l, Inc.*, 795 F.Supp. 508, 510 (D.Mass. 1992) (same); *Coman v. Int'l Playtex, Inc.*, 713 F.Supp. 1324, 1328 (N.D.Cal.1989)

(same); *Greer v. Skilcraft*, 704 F.Supp. 1570, 1582–83 (N.D.Ala.1989) (same).

To be sure, reference to state law on this point may cause results to vary across the country depending on "the procedural variations—and perhaps the procedural eccentricities—of the particular state's practice." 28 U.S.C. § 1446(b) Commentary. But it is also clear that if a particular state rule produces a result sharply at odds with the language of § 1446(b) and the principle that removal jurisdiction is to be strictly construed, then federal law must trump state law. In other words, state law governs this point unless its application would offend the language and underlying policy of § 1446(b).

**5.** Also worth noting is that this construction of Rule 3:3 is fully consistent with the analogous federal rule that makes clear that a civil

commenced on August 12, 2003, the date U.S. Airways filed its initial motion for judgment, and the one year limitation on removal commenced to run on the same date. Because PMA removed the case more than one year later on August 23, 2004, the plain language of the statute and the Rule compel the conclusion that PMA's request for removal is untimely and the case must be remanded to the state court. This conclusion is further supported by the principles of construction that require that removal jurisdiction be "strictly construe[d]" and that all doubts be resolved in favor of remand. *Mulcahey*, 29 F.3d at 151.

PMA advances two arguments to conclude that the one year limitation did not commence to run on August 12, 2003, the date the action was filed in the clerk's office, but rather on September 11, 2003, the date PMA was served with the motion for judgment.[6] If § 1446(b)'s one year limitations period commenced to run on September 11, 2003, PMA's notice of removal would have been timely filed on August 23, 2004, less than one year later. First, PMA argues that under Virginia law the "commencement of an action" for pur-

poses of removal is determined not by the date of initial filing, but by the date of *service* of the motion for judgment. In support of the argument, PMA relies chiefly on *Saunders v. Wire Rope Corp.*, 777 F.Supp. 1281 (E.D.Va.1991), and *Sheppard v. Wire Rope Corp.*, 777 F.Supp. 1285 (E.D.Va.1991), the only other decisions to apply Rule 3:3, Va. Sup.Ct. R., in the context of § 1446(b)'s one year diversity removal bar.[7] Yet, in the end, PMA's argument fails because it misconstrues Rule 3:3. Nor is *Saunders* persuasive; it misreads Rule 3:3 to reach an understandable result on facts sharply distinguishable from those presented here.

To begin with, PMA correctly points out that Rule 3:3 provides not only that an action is commenced by the "filing of the motion for judgment in the clerk's office," but also goes on to state that the action is then "instituted and pending as to all parties defendant thereto." PMA relies on this second clause to argue that it was not a "defendant thereto" on the date U.S. Airways filed this action against the four original defendants, and that hence no action commenced against PMA until it was served with the notice of motion for judgment. This argument conflates the mean-

action "is commenced by filing a complaint with the court." Rule 3, Fed.R.Civ.P.

6. PMA also argues in the alternative that the one year removal period did not commence to run as to four of the five plaintiffs until November 17, 2003, the date the express carriers were joined as additional parties to the lawsuit. This argument also falters on the plain language of § 1446(b). *See infra* note 12.

7. *Saunders* and *Sheppard* are virtually identical opinions by the same district judge on precisely the same facts but involving different plaintiffs. They are here collectively referred to as *Saunders*.

At oral argument, PMA referred to *Greer v. Skilcraft*, 704 F.Supp. 1570, 1583 (N.D.Ala. 1989), which interpreted and applied Alabama Rule of Civil Procedure 3, in support of PMA's interpretation of Rule 3, Va. Sup.Ct. R.

Although it is true that the two rules are very similar in form, because § 1446(b) looks to state law to define the "commencement" of an action, *Greer* is of limited usefulness when interpreting Virginia's procedural rules. Moreover, the court in *Greer* relied heavily on Alabama Supreme Court decisions interpreting Rule 3, Ala. R. Civ. P., which explicitly concluded that filing of a complaint does not constitute "commencement" for all purposes. *See id.* at 1582–83. The Supreme Court of Virginia has never reached a similar conclusion. What is more, other states have reached the opposite conclusion with regard to their own definitions of the "commencement of an action," which are also similar to the rules adopted in Virginia and Alabama. *See, e.g., Hom v. Serv. Merchandise, Inc.*, 727 F.Supp. 1343, 1344–45 (N.D.Cal.1990) (concluding that action commences upon filing of the complaint).

ing of "commence" and "pending." An action does not "commence" more than once merely because other parties later are joined or dismissed from the suit. When a plaintiff files the initial motion for judgment, the action is commenced and a case number is assigned. The case is pending only as to parties defendant thereto at that time because any defendants later added are not yet known. When additional defendants are joined, no second action is commenced and no new case number is assigned; rather, the action is then pending as to the joined defendants in addition to those parties already defendants. In sum, it is clear from the Rule that an action commences only once and that it does so upon filing of the initial motion for judgment.

This construction of the Rule comports with the general principle that doubts should be resolved in favor of remand and that removal jurisdiction should be strictly construed. *See Mulcahey,* 29 F.3d at 151. Any doubt about whether an action commences at filing is quickly erased by the recognition that a contrary result could effectively extend the opportunity for removal to months, indeed even years, later when new parties might be added or subtracted. Such a principle is clearly contrary to Congress' intent in passing the one year diversity removal limit "as a means of reducing the opportunity for removal after substantial progress has been made in state court." [8]

Nor does *Saunders* compel a different result; it is unpersuasive for two reasons. First, it is based on extreme facts and circumstances not present here. In essence the *Saunders* plaintiffs, unlike plaintiffs here, engaged in "gimmicks and artful maneuvering ... to straightjacket or deprive [a] nonresident defendant[ ] of [its] legitimate entitlements to removal." [9] The *Saunders* court was concerned that a strict

8. The legislative history of § 1446(b) provides that "[s]ection (b)2 amends 28 U.S.C. § 1446(b) to establish a one year limit on removal based on diversity jurisdiction as a means of reducing the opportunity for removal after substantial progress has been made in state court. The result is a modest curtailment in access to diversity jurisdiction. The amendment addresses problems that arise from a change of parties as an action progresses toward trial in state court." H.R.Rep. No. 889, at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6032.

Moreover, a literal reading of Rule 3:3 better comports with the language of § 1446(b). If Congress had intended that a separate and distinct one year removal limit would commence to run upon the joining of any additional defendant, it would have written the statute to read that diversity cases are barred from removal more than one year after commencement of the action *against each defendant.* What is more, in choosing the language of § 1446(b), Congress must undoubtedly have been mindful of the essentially identical language long present in Rule 3, Fed.R.Civ.P., to the effect that an action is "commenced by filing a complaint with the court."

9. In *Saunders,* the plaintiffs filed motions for judgment in state court seeking recovery for personal injury damages suffered on a construction site, but did not personally serve the two defendants sued until almost one year after filing. *Id.* at 1282. Upon being served, defendants could not immediately remove the case because the plaintiffs had joined one diverse and one non-diverse defendant. After the one year period ran, the plaintiffs settled with the non-diverse defendant and dismissed it from the suit, thus creating complete diversity of citizenship. Shortly thereafter, before the case made any real or substantial progress, the defendant sought to remove the case to federal court. *Id.*

These extreme circumstances are sharply distinguishable from the instant facts. Here, PMA was joined and served less than one month after filing and the case was not removable until two minor plaintiffs merged in a transaction entirely unrelated to this case. There is no evidence of "artful maneuvering" or attempts to manipulate the rules to defeat PMA's statutory right to removal. Further, in sharp contrast to *Saunders,* this case has already proceeded substantially toward final judgment, indeed, most of the central issues in the case have already been litigated and decided.

interpretation of the rule would permit plaintiffs "to easily prevent the defendant's right to remove a case to federal court simply by withholding service of the motion for judgment." *Id.* at 1284–85. No such artful maneuvering or gaming of the system is present in this case and thus the concerns motivating the court in *Saunders* are not present here.

Quite apart from the clear factual distinctions between the two cases, *Saunders* is also unpersuasive because it misreads Rule 3:3, albeit to reach an understandable result. The *Saunders* court confirmed that, by a plain reading of Rule 3:3, an action is commenced "upon filing of the motion for judgment, *not by service upon the defendant."* *Saunders,* 777 F.Supp. at 1283 (emphasis added). But the court went on to conclude that Rule 3:3 defined the commencement of an action only for the purpose of tolling the statute of limitations, and not for the purpose of removal. *Saunders,* 777 F.Supp. at 1283. Accordingly, the court concluded, that for purposes of removal, an action would commence against each defendant when the plaintiff made a *bona fide* effort to serve the defendant, ensuring that each defendant had one full year to remove the case after being served with process. *Id.* Al-

though the facts presented in *Saunders* were extreme and cried out for a remedy, that remedy is not to be found by misconstruing Rule 3:3, but rather by means of equitably tolling the one year diversity removal bar.[10] To be sure, equitable tolling may be appropriate in certain limited circumstances, but extension of the one year limitation period should be grounded in equity, not reinterpretation of the plain language of the Rule. And given this plain language and the guiding principle that courts "must strictly construe removal jurisdiction," [11] it follows that in Virginia an action commences, for purposes of removal as well as for other purposes, on the date of filing of the initial motion for judgment.[12]

PMA next argues in the alternative that even if the action commenced upon the filing of the initial motion for judgment, the one year limitation should be equitably tolled in this case. *See Tedford v. Warner–Lambert Co.,* 327 F.3d 423, 426 (5th Cir.2003) (holding that § 1446(b)'s one year time limit is not inflexible and that the parties' conduct, in some cases, may warrant equitable tolling of the one year limit rather than strict application of the rule). Assuming without deciding that § 1446(b)'s one year diversity removal bar

10. The Fifth Circuit has equitably tolled § 1446(b)'s one year limit in similar circumstances. *See Tedford v. Warner–Lambert Co.,* 327 F.3d 423, 427 (5th Cir.2003) (applying equitable tolling because strict application of the one year limit would "encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court, thereby undermining the very purpose of diversity jurisdiction").

11. *Mulcahey,* 29 F.3d at 151.

12. PMA also argues that a new one year limit should commence to run upon the joinder of any additional plaintiffs and thus a new one year limit began to run on November 17, 2003, when U.S. Airlines joined the four express carriers as additional plaintiffs. In sup-

port of this argument, PMA relies heavily upon *Hill v. Ascent Assur., Inc.,* 205 F.Supp.2d 606, 609 (D.Miss.2002) (holding that addition of new plaintiffs after one year triggers new one year limit on removal). Again, by the plain terms of the statute, however, there is no basis for interpreting the "commencement" of the action as an event that takes place every time a new plaintiff is joined. As another court criticizing the *Hill* decision notes, "it is the length of time that a *case* has been pending that is relevant, not the elapsed time since a plaintiff was added to the case." *Ardoin v. Stine Lumber Co.,* 298 F.Supp.2d 422, 425 (D.La.2003). All other cases cited by PMA were decided long before the passage of § 1446(b)'s one year limit on removal, and thus are irrelevant to the interpretation of this provision.

is subject to equitable tolling,[13] no circumstances warranting such tolling are presented here.

■■■■ PMA contends that plaintiffs had a duty to give PMA prompt notice of the July 1, 2004 Allegheny–Piedmont merger and that had plaintiffs done so on the date of the merger, nearly six weeks before the one year anniversary of filing, PMA easily could have complied with the one year limitation in filing its notice of removal. Further, PMA argues that plaintiffs continued to litigate the case in state court as if Allegheny remained a viable entity and as though the merger never occurred, thus erroneously leading PMA to believe that Allegheny, the only non-diverse plaintiff, was still a party to the case. Yet, PMA cites no authority establishing an affirmative duty requiring plaintiffs to inform PMA of the merger.[14] Moreover, there is no evidence that plaintiffs' failure to notify PMA of the merger was intentional or an effort to manipulate the rules to defeat removal as occurred in *Saunders*. There is no evidence in the record that plaintiffs' failure to notify PMA was anything more than a simple oversight or the result of unawareness that two minor plaintiffs had merged in a transaction completely unrelated to the case at bar.[15] In fact, the Fourth Circuit has indicated that it may be incumbent upon defendants to uncover the facts that create diversity jurisdiction if plaintiffs fail to provide that information. In *Lovern*, the court stated that § 1446(b)'s one year bar creates "a sufficient incentive for defendants promptly to investigate the factual requisites for diversity jurisdiction, including the citizenship of the plaintiff and the amount in controversy." 121 F.3d at 163. In sum, the circumstances at bar do not present a case suitable for equitable tolling, even assuming the applicability of that doctrine. Instead, where, as here, more than a year

---

**13.** This issue remains unresolved in this circuit. Additionally, the issue also remains unresolved in every other circuit but the Fifth. The district courts, however, have often engaged the issue and many have concluded, in contrast to *Tedford*, that § 1446(b)'s one year diversity removal bar is not subject to equitable tolling. *See, e.g., Caudill v. Ford Motor Co.*, 271 F.Supp.2d 1324, 1327 (N.D.Okla. 2003) (rejecting equitable tolling because federal removal jurisdiction is statutory in nature and to be strictly construed); *Jones Management Servs., LLC v. KES, Inc.*, 296 F.Supp.2d 892, 894 (E.D.Tenn.2003) ("The statute says what it says. Any attempt to read into the statute an 'equitable' exception amounts to judicial legerdemain.").

Although the Fourth Circuit has not addressed this issue, it has described the one year limit as an "absolute bar to removal." *See Lovern v. General Motors Corp.*, 121 F.3d 160, 163 (4th Cir.1997) ("In diversity cases, the statute explicitly safeguards against such a strategic delay by erecting an absolute bar to removal of cases in which jurisdiction is premised on 28 U.S.C. § 1332 'more than 1 year after the commencement of the action.' "). Moreover, it is generally for Congress to craft a legislative exception to a statute and not for the courts to adopt a judicially-crafted exception to a statute, particularly where, as here, Congress easily could have foreseen and avoided any inequitable consequences of the plain language of the statute. *See Martine v. Nat'l Tea Co.*, 841 F.Supp. 1421, 1422 (M.D.La.1993) ("[T]he one year limitation upon removal lends itself to abuses and inequities ... However, it is for Congress and not this Court to rewrite the provisions of section 1446(b) to curb such abuses."). Thus, although it is not decided here, it seems unlikely that the Fourth Circuit would adopt such an exception to § 1446(b)'s "absolute bar" to removal.

**14.** PMA cites *Oslo v. United States*, 709 F.Supp. 1386, 1387 (E.D.Va.1988) for the proposition that a non-existent party is not a proper plaintiff but nowhere does the case hold that a plaintiff has the affirmative duty to notify a defendant immediately once a plaintiff named in the caption has become a non-existent party.

**15.** Plaintiffs' attorney represented at the hearing that she did not know of the merger until after August 12, 2004.

has elapsed between commencement of the action and the removal and where, as here, there is no evidence that plaintiffs' have manipulated circumstances to preclude removal, a remand is warranted.

This result is entirely consistent with Congress' intent in passing § 1446(b) to prevent removal when "substantial progress has been made in the state court." H.R.Rep. No. 889, at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6032. In fact, in this case, the parties have made more than substantial progress toward a final result in state court, indeed it is nearing completion, and removal at this late stage would defeat the very reason for the one year diversity removal bar. Indeed, the liability issue has already been fully litigated in this case, leaving only damages to be resolved. It is difficult to imagine that Congress intended to allow removal in these circumstances.

This conclusion is further underscored by noting what PMA seeks to accomplish by removal. Specifically, PMA, almost contemporaneously with its notice of removal, filed a motion for reconsideration of the state court's eleven-page, single-spaced findings on liability, in essence requesting a *de novo* review of the state court's liability findings and conclusions. While it is true that the general rule in removal cases is that the federal court must take up the

case "where the state court left it off," [16] PMA's motion surely raises serious federalism concerns of the sort that underlie the *Rooker–Feldman* doctrine,[17] thus highlighting the inappropriate nature of a removal at this late stage in the proceedings.

In sum, in accordance with the plain language of § 1446(b) and Rule 3:3 and the principles that removal must be strictly construed and any doubts resolved in favor of remand, the one year diversity removal bar commenced to run on the date the action was commenced by the filing of the motion for judgment. Thus, PMA's notice of removal was untimely when filed more than one year later, even though filed less than one year after being served with process. Accordingly, plaintiff's motion is granted and the case is remanded to the Arlington County Circuit Court.

## III.

 Plaintiffs seek attorney's fees and costs incurred in connection with this remand motion pursuant to 28 U.S.C. § 1447(c), which provides in relevant part that, "an order remanding the case may require payment of just costs and actual expenses, including attorney's fees, incurred as a result of the removal." The decision to award fees upon remand is discretionary. *See In re Lowe,* 102 F.3d 731, 733 n. 2 (4th Cir.1996). Although

---

**16.** *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 436, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *Core v. Southwestern Bell Telephone Co.,* 673 F.Supp. 974, 978 (W.D.Ark.1987) (citations omitted) (reconsidering summary judgment motion) (a "federal court accepts [a removed] case in its current posture just as though everything done in state court had in fact been done in federal court").

**17.** *Cf. D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This is not to say that *Rooker–Feldman* applies to prevent reconsideration of a state court's findings of fact and conclusions

of law. *See Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1303 (5th Cir.1988) (stating that "where as in the present case the state court's ruling is purely interlocutory, it remains subject to reconsideration just as it had been prior to removal" to federal court); *Nasso v. Seagal,* 263 F.Supp.2d 596, 607–08 (E.D.N.Y.2003) (reconsidering state court motion to dismiss and rejecting *Rooker–Feldman* objection as inapplicable to any review authorized by Congress, such as removal). Because the state court's decision is a merits decision, albeit not final, it nonetheless raises federalism concerns similar to those that prevent a federal court from reviewing a final decision of the state court.

parties may be presumptively entitled to recover· attorney's fees under § 1447(c), "'the entitlement is ·not automatic—the presumption is not irrebuttable.'" *Lee Const. Co. of the Carolinas, Inc. v. Sloan Constr. Co. Inc.*, 104 Fed.Appx. 323, 324, 2004 WL 1790187, at *1 (4th Cir.2004) (unpublished opinion) (upholding denial of fees) (quoting *Sirotzky v. New York Stock Exch.*, 347 F.3d 985, 986 (7th Cir.2003)). This is not a case where "a 'cursory examination would have revealed' a lack of federal jurisdiction." *See In re Lowe*, 102 F.3d at 733 n. 2 (quoting *Husk v. E.I. Du Pont De Nemours & Co.*, 842 F.Supp. 895, 899 (S.D.W.Va.1994)); *Block v. Allstate Ins., Co.*, 202 F.3d 257, 1999 WL 1267346, at *1 (4th Cir.1999) (upholding denial of fees where district court could have concluded that case was not one in which "a cursory examination would have revealed a lack of jurisdiction"). Although PMA's arguments were not ultimately persuasive, PMA ·reasonably, though erroneously, relied on the holding in *Saunders* to conclude that removal was timely. Thus, a cursory examination would not clearly have revealed a lack of jurisdiction, and, therefore, a fee award is unwarranted.

An appropriate order will issue.